NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0471n.06
Filed: June 7, 2005

Case Nos. 03-2592, 04-1115, 04-1282

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee/Cross-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| PHILIP ZABAWA, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant/Cross-Appellee. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

BEFORE: NORRIS and BATCHELDER, Circuit Judges; MILLS[*], District Judge.

ALICE M. BATCHELDER, Circuit Judge. Defendant Philip Zabawa appeals his

conviction for being a felon in possession of a firearm, assigning as error the district court's denial

of his motion to suppress evidence. The United States cross-appeals the district court's ruling that

Zabawa is not an "armed career criminal" for the purposes of the Armed Career Criminal Act

("ACCA"), 18 U.S.C. § 924(e) and the district court's amended judgment specifying that Zabawa's

federal sentence should run concurrently with previously imposed state sentences. Because the

police officers who seized the evidence entered against Zabawa had reasonable suspicion supporting

their stop of his vehicle, we will AFFIRM the district court's denial of Zabawa's motion to suppress.

We will VACATE Zabawa's sentence and REMAND for resentencing because Zabawa is an "armed

_____

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

career criminal" for the purposes of the ACCA and because the district court lacked jurisdiction to amend Zabawa's sentence to run concurrently with his state conviction.

**I.**

On May 3, 2001, Officer Paul Kasperski observed a pickup truck driven by Zabawa swerve across the fog line and onto the shoulder of the road. Officer Kasperski, who believed that the driver was drunk, activated his lights and siren, intending to pull Zabawa over to investigate. After activating his lights, Officer Kasperski observed Zabawa swerve a second time before stopping this vehicle. Zabawa submitted to a field sobriety test, on which he did poorly, and Officer Kasperski arrested him and administered a field breath test. This test indicated that Zabawa's blood alcohol level was .151. Officer Kasperski then conducted a search of his person, which yielded a loaded pistol. Officers also observed an AK-47 rifle lying in plain view upon the floor of Zabawa's car, and a subsequent search of the vehicle at the police impound lot yielded a virtual arsenal of weapons.

Zabawa was charged with being a felon in possession of a firearm. He filed a motion to suppress the weapons found during the search of his vehicle, claiming that Officer Kasperski's stopping of his truck was not supported by reasonable suspicion. The district court denied the motion to suppress, and the case went to trial, resulting in a verdict of guilty. At the sentencing hearing, the district court concluded that Zabawa was not an "armed career criminal" for the purposes of the ACCA, a classification that carries a mandatory 15-year sentence, and sentenced Zabawa to 137 months' imprisonment. Six weeks after the initial pronouncement of the sentence, and five weeks after the entry of judgment and sentence, the district court entered an amended judgment and companion order, which ruled that Zabawa's federal sentence should run concurrently

2

with state sentences previously imposed.[1]  Zabawa timely appealed his conviction and the government cross-appealed.

## II.

Zabawa argues that the district court erroneously denied his motion to suppress because Officer Kasperski's stop of Zabawa's vehicle was not supported by reasonable suspicion.  We review the district court's denial of a suppression motion under a mixed standard.  *United States v. Akridge*, 346 F.3d 618, 622-23 (6th Cir. 2003).  "We reverse the district court's findings of fact only if they are clearly erroneous, but review *de novo* the district court's legal conclusions.  Where, as here, the district court has denied a motion to suppress, we review the evidence in a light most favorable to the Government."  *Id.* (internal citations omitted).

Police officers may detain a vehicle and question its occupants where the officers have a reasonable suspicion that criminal activity "may be afoot."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  *Arvizu* stated "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."  *Id.* at 273.  Reasonable suspicion to stop depends on "the totality of the circumstances—the whole picture . . . ."  *United States v. Cortez*, 449 U.S. 411, 417 (1981).  The reasonable suspicion analysis

> proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers.  From these data, a trained officer draws inferences and makes deductions-- inferences and deductions that might well elude an untrained person.  The process does not deal with hard certainties, but with probabilities.  Long before

---

[1]While on bond for the instant offense, Zabawa rammed his car into a car driven by a police officer who was trying to arrest him.  He was convicted in state court on charges of fleeing a police officer and malicious destruction of property.  He was sentenced on those charges prior to the imposition of the sentence in the instant matter.

the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same--and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Id*. at 418.

Applying this standard, we conclude that Officer Kasperski's stop of Zabawa's vehicle was supported by reasonable suspicion. The officer testified that he observed Zabawa's vehicle swerve over the fog line and onto the shoulder of the road. The district judge stated that a video tape of the incident, which was shot from a camera mounted on Officer Kasperski's car, shows that Zabawa's vehicle "crossed the white fog line for an appreciable distance." Based on his experience as a police officer, Officer Kasperski inferred that Zabawa's car was swerving because the driver was intoxicated. The officer further testified that after he activated his lights, he saw Zabawa swerve a second time, although this time the truck did not cross the fog line.

Zabawa argues that an isolated instance of swerving does not constitute reasonable suspicion to make a stop. Indeed, this court has stated that "briefly entering the emergency lane is insufficient to give rise to probable cause of a traffic violation and warrant an invasion of [the drivers'] Fourth Amendment rights." *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000). Zabawa's deviation, however, was not "brief." The district court observed that Zabawa's vehicle crossed the line "for an appreciable distance." Nor was this an isolated instance; Officer Kasperski observed Zabawa swerve twice within a quarter mile. Nor was there any apparent extrinsic reason for Zabawa's swerving; there is no evidence suggesting that the driving conditions at the time were less than optimal. *See Gaddis v. Redford Township*, 364 F.3d 763, 771 (6th Cir. 2004) (holding that officer had reasonable suspicion to stop a motorist who swerved twice was present and

4

distinguishing *Freeman* on the ground that "the suspect vehicle swerved only once, and there were no other significant facts to suggest drunk driving"); *see also United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir. 1999) ("the circumstances of this case persuade us [that the officer] had probable cause to stop Mr. Ozbirn after he saw the motor home drift onto the shoulder twice within a quarter mile under optimal road, weather, and traffic conditions").

Although Zabawa appears to argue that the second swerve observed by Officer Kasperski is not relevant to the determination of reasonable suspicion, we find that contention to be without merit. Zabawa had not yet been "seized" when he swerved for the second time, even though Officer Kasperski had already activated his lights. A seizure does not take place until the suspect is physically apprehended or he actually submits to an officer's authority. *California v. Hodari D.,* 499 U.S. 621, 625-26 (1991). A motorist who continues driving after a police officer has activated his sirens has not been "seized" under the Fourth Amendment. *See Watkins v. City of Southfield*, 221 F.3d 883, 888-89 (6th Cir. 2000). Because Zabawa's second swerve occurred before he submitted to the officer's authority, it may properly be considered in determining whether Officer Kaperski had reasonable suspicion that Zabawa was intoxicated.

Viewing the evidence in a light most favorable to the United States, we conclude that Officer Kasperski's decision to stop Zabawa was supported by reasonable suspicion.

**III.**

The United States challenges the district court's decision not to sentence Zabawa as an armed career criminal, as defined by the ACCA. We review de novo the district court's interpretation of the ACCA. *United States v. Seaton*, 45 F.3d 108, 111 (6th Cir. 1995). The ACCA mandates a minimum fifteen-year sentence for a defendant who is convicted of being in unlawful possession

5

of a firearm and who has "three previous convictions . . . for a violent felony." 18 U.S.C. §

924(e)(1). Zabawa's indictment lists three prior state convictions as ACCA predicate convictions:

an Arkansas conviction for terroristic threatening, a conviction for drug possession with intent to

distribute and a Michigan conviction for "attempted involuntary manslaughter," which stems from

the death of his 4-month-old baby.

Zabawa objected to the PSR's characterization of him as an armed career criminal, but the

district court initially agreed with the PSR and held that Zabawa's conviction for attempted

involuntary manslaughter was a "violent felony." Before judgment was entered on the district

court's oral pronouncement that Zabawa should receive the fifteen-year minimum sentence, the

district court reversed itself and held that attempted involuntary manslaughter was not a "violent

felony" and that Zabawa was not an armed career criminal. Accordingly, the district court sentenced

Zabawa to 137 months, the high end of the guideline range.

At issue is whether attempted involuntary manslaughter is a "violent felony" for the purposes

of the ACCA. Under that statute, a "violent felony" is

> any crime punishable by imprisonment for a term exceeding one year . . . that-
> (i) has as an element the use, attempted use, or threatened use of physical force
> against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves
> conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).

Given that attempt is a specific intent crime under Michigan law, *People v. Nickens*, 685

N.W.2d 657, 663 n.7 (Mich. 2004), the crime of attempted involuntary manslaughter appears, at first

blush, something of an oxymoron. But, although there is technically no such thing as attempted

involuntary manslaughter under Michigan law, "a plea to attempted manslaughter may be accepted

6

even when the only possible theory is involuntary manslaughter." *People v. Genes*, 227 N.W.2d 241, 243 (Mich. App. 1975); *see also People v. Hall*, 436 N.W.2d 446, 447-48 (Mich. App. 1989). In Michigan, the penalty for involuntary manslaughter is codified, but the definition is left to the common law. *People v. Datema*, 533 N.W.2d 272, 276 (Mich. 1995). Involuntary manslaughter is defined as,

> the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.

*Id*. (quoting *People v. Ryczek*, 194 N.W. 609 (Mich. 1923)).

Involuntary manslaughter does not fall within 18 U.S.C. § 924(e)(2)(B)(i) because the use of force against another is not an element. Nor is involuntary manslaughter one of the crimes specifically included in 18 U.S.C. § 924(e)(2)(B)(ii). Thus, if attempted involuntary manslaughter is a "violent felony" for the purposes of the ACCA, it must be because it "otherwise involves conduct that presents a serious potential risk of physical injury to another."

In *Taylor v. United States*, the Supreme Court articulated a "categorical approach" for determining the application of the "otherwise" clause, instructing the sentencing court to focus on the statutory definition of the crime charged rather than the actual facts underlying the conviction. 495 U.S. 575, 601 (1990); *see also Shepard v. United States*, 125 S. Ct. 1254, 1257-58 (2005). If the statute in question "generally proscribes conduct 'that presents a serious potential risk of physical injury to another,' then the 'otherwise' clause of § 924(e) applies." *United States v. Cooper*, 302 F.3d 592, 595 (6th Cir. 2002) (quoting *Taylor*, 495 U.S. at 602). Conviction under an involuntary manslaughter statute that requires death to be a proximate result of the defendant's unlawful conduct, therefore, is a conviction for a "violent felony" under § 924's "otherwise" clause.

*See United States v. Sanders*, 97 F.3d 856, 860 (6th Cir. 1996) (holding that conviction under Ohio's involuntary manslaughter statute is a "violent felony" conviction under the ACCA's "otherwise" clause); *United States v. Williams*, 67 F.3d 527, 528 (4th Cir. 1995) (involuntary manslaughter under South Carolina's involuntary manslaughter statute is a "violent felony" because that statute proscribes "[c]onduct that involves 'the reckless disregard for the safety of others' (and which results in someone's death) [and thus] clearly presents a 'serious potential risk of physical injury to another'"); *United States v. O'Neal*, 937 F.2d 1369, 1372 (9th Cir. 1990) (California's vehicular manslaughter statute is encompassed by § 924(e)(2)'s "otherwise" clause because the conduct it proscribes "involves the death of another person and is highly likely to be the result of violence") (quotation omitted).

We recognize that the *Taylor* categorical approach is not squarely applicable here, because the Michigan law does not define the offense of involuntary manslaughter in the statute proscribing that offense, but looks to the common law for the definition. This circuit has not yet addressed the question of whether a court may look to the common law definition of a crime to determine if it is a violent felony for the purposes of the ACCA. The Ninth Circuit, however, has held that "[w]here, as here, the state crime is defined by specific and identifiable common law elements, rather than by a specific statute, the common law definition of a crime serves as a functional equivalent of a statutory definition." *United States v. Melton*, 344 F.3d 1021, 1026 (9th Cir. 2003). Similarly, the Fourth Circuit has held that Virginia's robbery statute, which penalizes the crime of robbery but looks to the common law for the definition of that offense, defines a violent felony for purposes of the ACCA. *United States v. Presley*, 52 F.3d 64, 69 (4th Cir. 1995).

We find the reasoning in *Melton* persuasive:

> This common-sense approach is consistent with Congress's emphasis on using criminal elements, as opposed to statutory labels, to trigger the ACCA's enhancement provisions. It also makes sense in light of the second step of *Taylor*, which permits courts to look beyond the fact of conviction to determine the elements used to convict a defendant of a given offense.

*Melton*, 344 F.3d at 1026 (internal citations and quotations omitted). And we think that it is worth noting that looking to the common law definition of the crime, where the statute itself does not define it, does not frustrate the purposes of *Taylor*. We have held that *Taylor*'s categorical approach "avoids the impracticability and unfairness of allowing a sentencing court to engage in a broad factfinding inquiry related to the defendant's prior offenses." *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995). We avoid those difficulties as effectively by looking at the common law definition of the crime to determine its elements as we do by looking at a statutory definition of the crime. Accordingly, we will undertake the *Taylor* analysis by using Michigan's common law definition of involuntary manslaughter.

Involuntary manslaughter in Michigan, by definition, requires "the killing of another." *Datema*, 533 N.W.2d at 276 (quoting *Ryczek*, 194 N.W. 609). Though *Datema*'s definition of involuntary manslaughter sets forth three different theories under which a defendant could be charged, all of the theories require that death result from the defendant's unlawful act. Because involuntary manslaughter in Michigan requires death to be the proximate result of the defendant's unlawful conduct, it is a "violent felony" under § 924(e)'s "otherwise" clause.

The fact that Zabawa was convicted of *attempted* involuntary manslaughter rather than the completed crime is of no consequence. Where the crime itself is a "violent felony" under the ACCA, an attempt to commit that crime will also qualify as a "violent felony" under the "otherwise" clause if the state's attempt statute requires a "substantial step" toward completion of the offense.

9

*United States v. McKinney*, 328 F.3d 993, 995 (8th Cir. 2003); *see also United States v. Lane*, 909 F.2d 895, 903 (6th Cir. 1990) (holding that the ACCA's "otherwise" clause includes a conviction for attempted burglary because, under state law "an attempt to commit a particular crime requires the *mens rea* of purpose or knowledge and conduct toward the commission of that crime"). In Michigan, a person who acts with the specific intent to commit a crime is guilty of attempt when he "purposely does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." *People v. Thousand*, 631 N.W.2d 694, 700 (Mich. 2001). Zabawa pled guilty to attempted involuntary manslaughter. He necessarily, therefore, admitted to taking a substantial step toward the commission of involuntary manslaughter, a "violent felony," with the specific intent to commit that crime, and his conviction for attempted involuntary manslaughter is a "violent felony" for the purposes of the ACCA.

Zabawa also argues that enhancing his sentence for his conviction for attempted involuntary manslaughter pursuant to the ACCA would violate *Blakely v. Washington,* 124 S. Ct. 2531 (2004). The Supreme Court's intervening decision in *United States v. Booker*, however, holds that "[a]ny fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum sentence authorized by the facts established by a plea of guilt or a jury verdict must be admitted by the defendant or proved to the jury beyond a reasonable doubt." 125 S. Ct. 738, 756 (2005) (emphasis added). In *United States v. Barnett*, we expressly held that a district court's characterization of a prior conviction as a "violent felony" as defined by the ACCA did not violate the defendant's Sixth Amendment rights under *Booker*. 398 F.3d 516, 524-25 (6th Cir. 2005).

**IV.**

10

The United States appeals the district court's order amending Zabawa's sentence to run concurrently with a state sentence that he was serving. We review de novo a district court's determination that it has the authority to amend a sentence. *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001).

While awaiting sentencing before the district court, Zabawa was tried on pending state charges and was sentenced to concurrent terms of 58 months to 25 years. On December 2, 2003, the district court sentenced Zabawa to 137 months' incarceration and judgment was entered on December 8. This judgment is silent as to whether Zabawa's federal sentence is to run concurrently with his state sentence. Because "[t]here is a presumption that a federal sentence imposed after a prior state sentence will be served consecutively to the state sentence," *Weeks v. L.E. Fleming*, 301 F.3d 1175, 1179 (10th Cir. 2002) (citing 18 U.S.C. § 3584(a)), we interpret the judgment's silence as imposing a federal sentence to run consecutively with Zabawa's state sentence. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.")

On December 9, 2003, defense counsel gave the district court judge a note requesting that the judgment be amended to provide that Zabawa's federal sentence should run concurrently with his state sentence. Three days later, defense counsel filed a "Motion to Amend the Judgment," which repeated the request to run the sentences concurrently. On January 14, 2004, the district court issued an order and amended judgment specifying that the "term of 137 months [is] to run concurrently with the State sentence defendant is serving."

The United States argues that the district court lacked jurisdiction to amend Zabawa's sentence. We agree. Title 18 U.S.C. § 3582(c)(1)(B) provides that "the court may modify an

11

imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." Only two statutory provisions permit such a modification: 28 U.S.C. §§ 2106 and 2255, both of which are plainly inapplicable here. Therefore, if the district court had the authority to amend Zabawa's sentence, it must be because FED. R. CRIM. P. 35(a) permits it. Rule 35(a) provides that "[w]ithin 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Rule 35(a)'s seven-day time period is jurisdictional. *United States v. Diaz-Clark*, 292 F.3d 1310, 1317 (11th Cir. 2002) (citing cases from the Second, Fifth, Eighth, Ninth, and Tenth Circuits); *accord Word v. United States*, 109 Fed.Appx. 772 (6th Cir. 2004) (unpublished). Whether the seven-day period runs from the date the sentence is imposed or from the date of the judgment is unsettled in our circuit, *see United States v. Galvan-Perez*, 291 F.3d 401, 405 (6th Cir. 2002), but we need not address this question. Even assuming that the seven-day period runs from the date of the judgment, the judgment in this case was entered on December 8, 2003, and the order amending that sentence was entered on January 14, 2004, well beyond the seven-day period.

Finally, a court also has jurisdiction to amend a sentence in conformity with FED R. CRIM. P. 36, which provides "the court may at any time correct a clerical error in a judgment, order or other part of the record, or correct an error in the record arising from oversight or omission." *United States v. Robinson*, 368 F.3d 653, 655 (6th Cir. 2004). Like a scrivener's error, "a clerical error must not be one of judgment or even misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature. Rule 36 has been consistently interpreted as dealing only with clerical errors, not with mistakes by the courts." *Id* at 656 (internal citations and quotations omitted). The *Robinson* court stated "Rule 36 authorizes a court to correct only clerical

12

errors in the transcription of judgments, not to effectuate its unexpressed intentions at the time of sentencing." *Id*. at 656-57 (quoting *United States v. Werber*, 51 F.3d 342, 343 (2d Cir. 1995)). Because the district court's order amending sentence expressly stated that it "merely [put] in writing what [the district court] would have done expressly had it been apprized of [Zabawa's state court conviction] at the time of defendant's sentencing," Rule 36 does not apply here.

For the foregoing reasons, we **AFFIRM** the district court's denial of Zabawa's motion to suppress, **VACATE** his sentence, and **REMAND** this case to the district court for re-sentencing consistent with this opinion.