**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0496n.06

**No. 08-1630**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 11, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| RAY BRUCE CULBERTSON, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant.* | ) | |

BEFORE:     KEITH, COLE, and GIBBONS, Circuit Judges.

**COLE, Circuit Judge.** Defendant-Appellant Ray Bruce Culbertson appeals his conviction and sentence for being a felon in possession of a firearm. While being chased by law enforcement officers, Culbertson tossed away a dark-colored object. Minutes later, police recovered a gun where the tossed object likely would have landed. Culbertson now challenges the limitations placed on his cross-examination of a police officer, among other issues. We **AFFIRM** Culbertson's conviction but **VACATE** his sentence and **REMAND** for resentencing.

**I. BACKGROUND**

On June 19, 2004, Officers Craig Schrameck and Keith McCloud were assigned to work Detroit's 4th Precinct ("Precinct"), which covers the area of Electric and Gleason streets. Officers Detrich Spidell and Paulo Hernandez also were assigned that day to work the same Precinct, known for playing host to frequent narcotic sales. Two patrol cars usually monitor the Precinct in tandem,

due to its isolated nature. At approximately 6:30 that evening, Spidell and Hernandez noticed two vehicles blocking Gleason Street. An individual later identified as Culbertson was leaning inside the driver's side window of one of the cars, a black Pontiac. Roughly five to ten seconds after McCloud and Schrameck pulled behind the Pontiac in their marked police car, McCloud caught the driver's eyes and Culbertson "took off running" north on Electric Street. (Dist. Ct. Docket No. 103 at 43.) Spidell testified that he immediately started to run after Culbertson, who had a look of "panic" as he began to flee. (Dist. Ct. Docket No. 102 at 138.)

Culbertson ran up Electric and turned west between the third and fourth houses on the street, with Spidell in pursuit on foot. Spidell testified that he then saw Culbertson "throw a dark-colored object." (*Id.* at 140.) At the time, Spidell was trailing Culbertson by approximately twenty-five to thirty feet, with an unobstructed view of Culbertson's action. Culbertson then ran through an open alley, at which time Schrameck joined the chase. Culbertson jumped over a fence and ended up in the backyard of the fourth house on Edsel Street, where he was apprehended and handcuffed. The whole ordeal lasted only a few minutes, with Culbertson ending up in the custody of Spidell and Schrameck.

Once Spidell and Schrameck apprehended Culbertson, McCloud and Spidell backtracked to recover the object that Culbertson had thrown away. The two spotted a dark-colored handgun in the grass in the backyard of 3210 Electric. They recovered the gun approximately three to four minutes after apprehending Culbertson.

Culbertson was indicted on one count of being a felon in possession of a firearm following three serious felony offense convictions, in violation of 18 U.S.C. §§ 922(g) and 924(e). After trial,

a jury found Culbertson guilty. Concluding that Culbertson was an Armed Career Criminal within the meaning of 18 U.S.C. § 924(e), the district court sentenced him to the mandatory minimum of fifteen years incarceration.

Culbertson now appeals both his conviction and sentence.

## II. ANALYSIS

**A.      Confrontation Clause**

Culbertson argues that the district court limited his ability to cross-examine Officer Schrameck by prohibiting a direct comparison of Schrameck's police report with McCloud's report in violation of his Sixth Amendment right to confrontation. We review Confrontation Clause challenges de novo, but evidentiary rulings for abuse of discretion. *United States v. Johnson*, 440 F.3d 832, 842 (6th Cir. 2006).

"'[T]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974)) (emphasis in original). "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Id.* at 680 (quoting *Davis*, 415 U.S. at 318). We have found that the key "is whether the jury had enough information to assess the defense's theory of the case despite the limits placed on cross-examination." *United States v. Holden*, 557 F.3d 698, 704 (6th Cir. 2009).

Here, the jury had enough information to assess the defense's theory of the case. Both Schrameck and McCloud testified that their police reports contain an error regarding the address at which Culbertson was apprehended on June 19, 2004. The reports list an address of 3217 Electric Street, but both officers testified on direct examination that the correct address is 3217 Edsel Street. While the error was relevant—"if Defendant had been arrested on Electric, it would have been impossible for him to have tossed the gun where it had been found"—Defense counsel had an opportunity to cross-examine the witnesses regarding the error and the possibility of collusion in preparation of the reports. (Br. of Def.-Appellant Culbertson 40.) Counsel specifically asked Schrameck: "Did you and McCloud get together and collaborate in the preparation of your report?" (Dist. Ct. Docket No. 103 at 163.) Counsel also asked: "How do you know it was a mistake if you and your partner both said the same street?" (*Id.* at 161.)

While the district court foreclosed line-by-line comparison of the two reports—since McCloud's report was not admitted into evidence—the jury had information sufficient to assess Schrameck's reliability. The jury was aware that Schrameck's testimony and police report did not match up with regard to the address at which Culbertson was arrested and that Schrameck's report omitted the fact that Spidell and McCloud had searched for the gun together. And the jury knew that McCloud's police report was inconsistent in the same manner. The jury heard Schrameck's explanation: "We use the same computer. I typed my narrative over the computer [McCloud] was using and that could be how the typo ended up on there." (*Id.* at 148.) And when asked on direct examination, "[w]ould there still be perhaps some portion of his report that would still remain as you sat down to type your report," Schrameck responded, "[p]ossibly, yeah if it didn't all clear out or –

yeah." (*Id.* at 148.)  Further, the jury was aware that Schrameck; McCloud; Hernandez; the Assistant

U.S. Attorney; and a Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives officer had met

a few days prior to trial and discussed the errors in the police reports.  The district court's limitation

on the scope of defense counsel's cross examination of Schrameck, therefore, did not amount to a

Confrontation Clause violation.

**B.      Vehicular Manslaughter Conviction and Armed Career Criminal Act**

Culbertson also argues that his 1996 Michigan conviction for manslaughter with a motor

vehicle does not constitute a "violent felony" within the meaning of the Armed Career Criminal Act

("the ACCA" or "the Act"), 18 U.S.C. § 924(e), and that therefore the district court erred in finding

that he had committed three previous "violent felon[ies]" and was subject to the Act's mandatory

minimum sentence.  The government agrees.

We review questions of statutory interpretation de novo.  *United States v. Shafer*, 573 F.3d

267, 272 (6th Cir. 2009).  The ACCA states, in relevant part:

> (e)(1) In the case of a person who violates section 922(g) of this title and has three
> previous convictions by any court referred to in section 922(g)(1) of this title for a
> violent felony or a serious drug offense, or both, committed on occasions different
> from one another, such person shall be fined under this title and imprisoned not less
> than fifteen years . . . .
> (2) As used in this subsection– . . .
> (B) the term "violent felony" means any crime punishable by imprisonment for a
> term exceeding one year . . . that –
> (i) has as an element the use, attempted use, or threatened use of physical force
> against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves
> conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e).  Two provisions, therefore, define the term "violent felony," the latter including

a residual clause.

In Michigan, the definition of manslaughter is set out in the common law.  *People v. Datema*,

533 N.W.2d 272, 276 (Mich. 1995).  Manslaughter with a motor vehicle is defined as "operat[ing]

a vehicle in a grossly negligent manner and substantially caus[ing] the death of another."  *People v.*

*Swift*, No. 271105, 2007 WL 3033944, *4 (Mich. Ct. App. Oct. 18, 2007) (citing *People v. Lardie*,

551 N.W.2d 656, 664 n.28 (Mich. 1996), *overruled in part on other grounds by People v. Schaefer*,

703 N.W.2d 774 (Mich. 2005)).  Gross negligence occurs when the defendant:

> (1) knew the situation required the exercise of ordinary care and diligence to avert
> injury to another, (2) had the ability to avoid the harm by exercising ordinary care and
> diligence, and (3) failed to exercise the care and diligence necessary "to avert the
> threatened danger when to the ordinary mind it must be apparent that the result is
> likely to prove disastrous to another."

*Id.* (quoting *People v. McCoy*, 566 N.W.2d 667, 669 (Mich. Ct. App. 1997)).  In other words, gross

negligence does not involve purposeful conduct.  As such, manslaughter with a motor vehicle does

not fall within 18 U.S.C. § 924(e)(2)(B)(i) because the "use, attempted use, or threatened use of

physical force against the person of another" is not an element of the offense.  18 U.S.C. §

924(e)(2)(B)(i); *see Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("'[U]se' requires active employment.

. . . While one may, in theory, actively employ *something* in an accidental manner, it is much less

natural to say that a person actively employs physical force against another person by accident.").

Nor is manslaughter with a motor vehicle one of the enumerated offenses in § 924(e)(2)(B)(ii). 18

U.S.C. § 924(e)(2)(B)(ii) (listing burglary, arson, extortion, and crimes involving the use of

explosives). At issue, then, is whether Culbertson's previous conviction for manslaughter "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.*

We previously have held that involuntary manslaughter and equivalent crimes constitute "violent felon[ies]" within the ACCA. *See, e.g.*, *United States v. Zabawa*, 134 F. App'x 60, 66 (6th Cir. 2005) (finding Michigan offense of attempted involuntary manslaughter qualifies as "violent felony" under the ACCA). However, subsequent to these decisions, and subsequent to Culbertson's sentencing, the Supreme Court decided *Begay v. United States*, 553 U.S. 137 (2008), and *Chambers v. United States*, 129 S. Ct. 687 (2009). In *Begay*, the Supreme Court found that a conviction for driving under the influence of alcohol or drugs differs from the crimes listed in § 924(e)(2)(B)(ii), in that "the listed crimes all typically involve purposeful, 'violent,' and 'aggressive' conduct." 553 U.S. at 144-45 (citation omitted). "By way of contrast, statutes that forbid driving under the influence . . . are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all." *Id.* at 145. In *Chambers*, the Court held that the crime of "failure to report" is not a "violent felony" within the meaning of the ACCA. 129 S. Ct. at 691. The Court found that "the crime amounts to a form of inaction, a far cry from the purposeful, violent, and aggressive conduct potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion." *Id.* at 692 (quotation marks omitted).

In *United States v. Ford*, we determined that *Begay* and *Chambers* indicate that two questions guide application of the ACCA's residual clause. 560 F.3d 420, 421 (6th Cir. 2009) (construing the sentencing enhancement for career offenders, *see* U.S. Sentencing Guidelines Manual § 4B1.1(a)

(2002), which defines "crime of violence" in language virtually identical to the ACCA's definition of "violent felony"). First, "does the crime present a serious potential risk of violence akin to the listed crimes?" *Id.* And second, "does the crime involve the same kind of 'purposeful, violent, and aggressive conduct' as the listed crimes?" *Id.* In answering these questions, we apply a "categorical" approach: "[W]e look at the statutory definition of the crime of conviction, not the facts underlying that conviction, to determine the nature of the crime." *Id.* at 422. In cases such as this one, where a crime is defined by common law rather than by statute, we look at the common law definition. *Zabawa*, 134 F. App'x at 65.

Applying this analysis, we find that the crime of manslaughter with a motor vehicle is not a "violent felony." The crime does present a serious potential risk of violence akin to that posed by the listed crimes. Yet, manslaughter with a motor vehicle involves gross negligence, not purposeful intent. Therefore, it is difficult to construe it as purposeful, violent, and aggressive. In reaching this conclusion, we are not alone; other Circuit Courts have held similarly following *Begay*. *See, e.g.*, *United States v. Herrick*, 545 F.3d 53, 59 (1st Cir. 2008) (holding that Wisconsin's vehicular homicide felony is not a crime of violence under U.S.S.G. § 4B1.2(a)); *United States v. Smith*, 544 F.3d 781, 786 (7th Cir. 2008) ("[T]hose crimes with a *mens rea* of negligence or recklessness do not trigger the enhanced penalties mandated by the ACCA.").

Therefore, we vacate Culbertson's sentence and remand for resentencing.

C.     **Sufficiency of Evidence**

Culbertson next argues insufficient evidence existed to sustain his conviction for being a felon in possession of a firearm in violation of Federal Rule of Criminal Procedure 29. He

specifically claims there was insufficient evidence to prove the possession element of the offense.

In reviewing a sufficiency of the evidence challenge, we ask whether, after reviewing the evidence

in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979);

*United States v. Guthrie*, 557 F.3d 243, 253 (6th Cir. 2009). "We do not independently assess the

credibility of witnesses or the weight of the evidence." *Guthrie*, 557 F.3d at 253. "Circumstantial

evidence alone is sufficient to sustain a conviction and such evidence need not remove every

reasonable hypothesis except that of guilt." *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir.

2005) (citation and quotation marks omitted).

*Barnett* helps guide our analysis. In that case we found the following evidence sufficient to

sustain a felon in possession of a firearm conviction:

> Officer Jefferson testified at trial that he saw [defendant] crouched outside the
> residence at 661 Shel Lane, holding a long black object that looked like a shotgun
> [but he was not sure]. He further testified that he saw Barnett throw the object to the
> ground as Barnett began to flee from the residence. Furthermore, Officer Crowe
> testified that upon investigating the residence after Barnett was apprehended, she
> found a black and chrome rifle in the front yard. This evidence is sufficient evidence
> to support the jury's guilty verdict.

*Id.* We dismissed the defendant's challenge that Officer Jefferson's testimony was inconsistent and

unreliable, as "attacks on witness credibility are simply challenges to the *quality* of the

government's evidence and not to the sufficiency of the evidence." *Id.* (quotation marks and citation

omitted).

Here, too, circumstantial evidence is sufficient to sustain Culbertson's conviction. Spidell

testified that he saw Culbertson throw away a "dark-colored object" as he chased Culbertson on foot.

(Dist. Ct. Docket No. 102 at 140.) McCloud testified that Spidell told him that Spidell saw Culbertson throw something, although he was not sure what it was. McCloud asked Spidell if the thrown object could have been a gun, and Spidell replied that it could have been. McCloud further testified that the two officers backtracked through the area Spidell covered during the chase and could "clearly see a gun" lying in the grass there. (Dist. Ct. Docket No. 103 at 22.) Nothing else was in the immediate area where the gun was found. Hernandez testified that Spidell stated that he saw Culbertson throw something, "which he thought looked like a gun," during the chase and that the officers recovered the gun mere minutes after Culbertson was apprehended. (*Id.* at 109.) And Schrameck testified that Spidell said he saw Culbertson toss something away during the chase.

This evidence is sufficient for a rational trier of fact to infer that the gun the officers recovered was indeed the object Culbertson tossed while being chased. Sufficient evidence therefore existed to find Culbertson guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

**D.    Speedy Trial Act**

Culbertson finally argues that we should remand his case to the district court, because it failed to determine the exact date of his federal arrest for purposes of determining whether there was a violation of the Speedy Trial Act, 18 U.S.C. § 3161(b). After an oral hearing, the district court adopted the magistrate judge's report and recommendation denying Culbertson's motion to dismiss on grounds of a Speedy Trial Act violation.

The Speedy Trial Act states, in relevant part: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which

such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). We review the district court's interpretation of the Speedy Trial Act de novo and its factual findings for clear error. *United States v. Carroll*, 26 F.3d 1380, 1390 (6th Cir. 1994).

A defendant is not arrested for purposes of the Speedy Trial Act until he is taken into federal custody for the purpose of responding to a federal charge. *See United States v. Copley*, 774 F.2d 728, 730 (6th Cir. 1985). In this case, a federal complaint charging Culbertson with being a felon in possession of a firearm was filed on July 1, 2004, but, due to a state parole hold, he was not taken into federal custody until January 10, 2005. Although the January 10, 2005, date was not noted by the district court in its decision, it subsequently was identified by the probation officer in the Presentence Investigation Report. A remand therefore is unnecessary. Culbertson was indicted on January 15, 2005, well within the range provided for by the Speedy Trial Act.

We therefore affirm the decision of the district court denying Culbertson's motion to dismiss pursuant to the Speedy Trial Act.

### III. CONCLUSION

For these reasons, we **AFFIRM** Culbertson's conviction, but **VACATE** his sentence and **REMAND** for resentencing.