PEOPLE v McCOY

Docket No. 191854. Submitted January 22, 1997, at Detroit. Decided May 16, 1997, at 9:10 A.M. Leave to appeal sought.

Arsner B. McCoy was convicted by a jury in Detroit Recorder's Court, Gershwin A. Drain, J., of involuntary manslaughter, felonious driving, and leaving the scene of a motor vehicle accident involving personal injury and was sentenced as a third-offense habitual offender to concurrent terms of imprisonment of twelve to thirty years, three to ten years, and one to four years, respectively. One person had died and another had been injured when both were struck by a van being driven by the defendant at a speed that exceeded the posted speed limit and the speed of traffic as both stood in the middle of a road waiting for traffic to clear to cross the road. The defendant appealed.

The Court of Appeals *held*:

1. Sufficient evidence of gross negligence was presented in support of the convictions of manslaughter and felonious driving. Gross negligence is established with proof of knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, of ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and of the omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. In this case, the jury could infer that the defendant knew that the act of driving requires the exercise of ordinary care and diligence to avert injury to another and that he had the ability to avoid the harm that occurred by exercising ordinary care and diligence, but failed to do so. Under the totality of the circumstances of this case, the disastrous results of defendant's omission to use care and diligence would have been apparent to the ordinary mind.

2. The sentence for manslaughter is not disproportionate in light of the seriousness of that offense and the defendant's extensive criminal history.

Affirmed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Jeffrey Caminsky*, Assistant Prosecuting Attorney, for the people.

*Roman S. Karwowski*, for the defendant on appeal.

Before: REILLY, P.J., and WAHLS and N. O. Holowka*, JJ.

PER CURIAM. Defendant appeals as of right his jury trial convictions of involuntary manslaughter, MCL 750.321; MSA 28.553, felonious driving, MCL 752.191; MSA 28.661, and leaving the scene of a personal injury accident, MCL 257.617; MSA 9.2317. Defendant was sentenced as a third-offense habitual offender, MCL 769.11; MSA 28.1083, to concurrent terms of twelve to thirty years' imprisonment for the manslaughter conviction, three to ten years' imprisonment for the felonious driving conviction, and one to four years' imprisonment for the conviction of leaving the scene of an accident. We affirm.

Defendant's first claim on appeal is that the prosecution presented insufficient evidence of gross negligence to support his convictions of manslaughter and felonious driving. We disagree.

In reviewing claims of insufficiency of the evidence to sustain a verdict, this Court views the evidence in the light most favorable to the prosecution to determine if a rational factfinder could find the essential elements of the crime proved beyond a reasonable doubt. *People v Honeyman*, 215 Mich App 687, 691;

---

* Circuit judge, sitting on the Court of Appeals by assignment.

546 NW2d 719 (1996). An unlawful act, committed with the intent to injure or in a grossly negligent manner, that proximately causes death is involuntary manslaughter. *People v Datema*, 448 Mich 585, 606; 533 NW2d 272 (1995). As with involuntary manslaughter, a conviction of felonious driving requires proof of gross negligence. *People v Chatterton*, 411 Mich 867 (adopting the dissent of Judge CAVANAGH in *People v Marshall*, 74 Mich App 523, 528-531; 255 NW2d 351 [1977]); see *People v Johnson*, 174 Mich App 108, 116; 435 NW2d 465 (1989). The Court in *Datema, supra,* p 604, explained the distinction between criminal intent, negligence, and gross negligence:

> [T]he legally significant mental states [should be viewed] as lying on a continuum: criminal intention anchors one end of the spectrum and negligence anchors the other. Intention, as explained by Professor Hall, "emphasiz[es] that the actor seeks the proscribed harm not in the sense that he desires it, but in the sense that he has chosen it, he has decided to bring it into being." General Principles of Criminal Law (2d ed), p 114. Negligence, lying at the opposite end of the spectrum, "implies inadvertence, i.e., that the defendant was completely unaware of the dangerousness of this behavior although actually it was unreasonably increasing the risk of occurrence of an injury." *Id.*
>
> Criminal negligence, also referred to as gross negligence, lies within the extremes of intention and negligence. As with intention, the actor realizes the risk of his behavior and consciously decides to create that risk. As with negligence, however, the actor does not seek to cause harm, but is simply "recklessly or wantonly indifferent to the results."

Here, two sisters were standing on the yellow line in the middle of Greenfield Road waiting for traffic to clear when they were struck from behind by a van driven by defendant. One of the sisters was killed,

and the other was injured. The accident occurred at approximately 3:00 P.M. on February 3, 1995, as the deceased was on her way home from school. The sole witness to the accident testified that the van was traveling at a speed of approximately fifty to fifty-five miles an hour when it struck the two sisters. The posted speed limit was thirty-five miles an hour. Defendant argues that this evidence was insufficient to show that he was driving in a grossly negligent manner at the time that he struck the decedent.

In order to show gross negligence, the following elements must be established:

> (1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.
> (2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.
> (3) The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. [*People v Lardie*, 452 Mich 231, 251-252; 551 NW2d 656 (1996); *People v Orr*, 243 Mich 300, 307; 220 NW 777 (1928).]

Here, there is no question that a jury could properly infer that defendant knew that the act of driving requires the exercise of ordinary care and diligence to avert injury to others. Similarly, there is no question that a jury could properly infer under these facts that defendant had the ability to avoid the harm that occurred by exercising ordinary care and diligence, but failed to do so. Accordingly, the only question is whether to the ordinary mind it must have been apparent that the result was likely to prove disastrous to another. *Lardie, supra*, p 244; *Orr, supra*, p 307.

A violation of the speed limit, by itself, is not adequate to establish the element of gross negligence. *Lardie, supra*, p 244; *People v Barnes*, 182 Mich 179, 193; 148 NW 400 (1914). However, under certain circumstances, a violation of the speed limit can be gross negligence. To state the obvious, a jury could properly determine that traveling at a speed of one hundred miles an hour through a residential neighborhood is gross negligence. Similarly, given the right conditions, it is possible to drive in a grossly negligent manner even in the absence of exceeding the speed limit (e.g., in heavy traffic, on slick roads, or in fog). Accordingly, the appropriate consideration is not whether defendant was exceeding the speed limit, but rather, whether defendant acted with gross negligence under the totality of the circumstances, including defendant's actual speed and the posted speed limit. See *Barnes, supra*, p 193. This is a question that ordinarily is for the jury. *Id.*, p 199.

Viewing the evidence in a light most favorable to the prosecution, a jury could reasonably find that at the time his van struck the two sisters, defendant was traveling at a speed of fifty-five miles an hour in a thirty-five miles an hour zone during heavy traffic conditions. In addition, a jury could reasonably find that this speed was "a lot faster than the rest of traffic," and significantly faster than the average speed on that stretch of road of forty to forty-five miles an hour. Finally, the two sisters had been standing stationary at the same location for several seconds. The fact that defendant did not slow down or swerve in an attempt to avoid striking them suggests that he was traveling at a reckless speed. Viewing this evidence in the light most favorable to the prosecution,

a reasonable jury could find that defendant was grossly negligent. See *People v Moseler*, 202 Mich App 296, 298; 508 NW2d 192 (1993) (gross negligence was a jury question where the defendant went through four red traffic lights at a speed of forty-five to fifty-five miles an hour)..

This conclusion is strengthened by the testimony concerning defendant's conduct immediately following the accident. Viewing the evidence in the light most favorable to the prosecution, defendant approached the next light at a speed of fifty miles an hour. Defendant slowed down to a speed of twenty-five miles an hour to make a left turn onto Puritan against a red light. He nearly hit several cars in the process. Defendant continued on Puritan, weaving in and out of traffic, and forcing a vehicle in the oncoming lane off the road. The van then turned left onto Murray Hill, tires squealing, nearly hitting a grandmother and her grandchildren. It is true that evidence of immoderate speed at points remote from the scene of the accident is incompetent to establish immoderate speed at the accident scene itself. *People v Campbell*, 237 Mich 424, 433; 212 NW 97 (1927). Here, however, the facts that subsequent observations took place in the immediate vicinity of the accident, and that defendant's speed did not change between the time of the accident and the time that he approached the first intersection, would allow a reasonable jury to conclude that defendant engaged in a single, continuous pattern of grossly negligent driving. See *People v Corbin*, 31 Mich App 338, 341; 187 NW2d 705 (1971). Accordingly, the trial court did not err in denying defendant's motion for a directed verdict.

Defendant's last claim on appeal is that his sentence of twelve to thirty years' imprisonment for the manslaughter conviction was disproportionate. We disagree. Review of habitual offender sentences is limited to consideration of whether the sentence violates the principle of proportionality. *People v Cervantes*, 448 Mich 620, 622, 630; 532 NW2d 831 (1995). Here, defendant had been convicted previously of second-degree murder, attempted possession of cocaine, possession of morphine, and various other vehicle-related offenses, including two violations of driving with a suspended license. Defendant was under active probation supervision at the time that he committed these offenses. In light of the seriousness of the crime and defendant's extensive criminal history, defendant's sentence was proportionate. *People v Kennebrew*, 220 Mich App 601; 560 NW2d 354 (1996).

Affirmed.