# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

JOHNATHAN LAMONTE SAILS,

       Defendant-Appellee.

UNPUBLISHED
April 20, 2017

No. 330192
Macomb Circuit Court
LC No. 2014-000550-FH

Before: FORT HOOD, P.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

The prosecution appeals as of right the trial court's opinion and order granting defendant's motion for reconsideration and motion to quash the information, and dismissing the charge of one count of involuntary manslaughter, MCL 750.321. We reverse and remand for further proceedings consistent with this opinion.

This case arises from the drowning death of KeAir Swift in a swimming pool at East Detroit High School. Defendant was a substitute teacher at East Detroit High School and was the only teacher supervising the pool area when the incident occurred. Defendant was charged with one count of involuntary manslaughter stemming from the incident. Defendant was bound over to the trial court. The trial court initially denied defendant's motion to quash the information. However, after defendant filed a motion for reconsideration, the trial court quashed the information and dismissed the charge. The prosecution contends that the trial court improperly quashed the information and dismissed the case because sufficient evidence existed for the district court to bind defendant over for trial on the involuntary manslaughter charge. We agree.

" '[We review] for an abuse of discretion both a district court's decision to bind a defendant over for trial and a trial court's decision on a motion to quash an information.' " *People v Waterstone*, 296 Mich App 121, 131; 818 NW2d 432 (2012) (citation omitted). Likewise, we review a trial court's ruling on a motion for reconsideration for an abuse of discretion. *People v Perkins*, 280 Mich App 244, 248; 760 NW2d 669 (2008), aff'd 482 Mich 1118 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "A trial court necessarily abuses its discretion when it makes an error of law." *Waterstone*, 296 Mich App at 132. However, "[t]o the extent that a lower court's

-1-

decision on a motion to quash the information is based on an interpretation of the law, appellate review of the interpretation is de novo." *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010).

"[T]he primary function of a preliminary examination 'is to determine if a crime has been committed and, if so, if there is probable cause to believe that the defendant committed it.' " *People v McGee*, 258 Mich App 683, 696; 672 NW2d 191 (2003) (citation omitted). Probable cause exists when the evidence presented is "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003) (quotation marks and citation omitted). Probable cause is a lesser standard of proof than guilty beyond a reasonable doubt because evidence that allows at least an inference to be drawn establishing the elements of the crime charged is sufficient. *Id*. In other words, "[t]he prosecutor need not establish beyond a reasonable doubt that a crime was committed. He need present only enough evidence on each element of the charged offense to lead a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of [the defendant's] guilt." *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2003) (citation and quotation marks omitted; alteration in original). If conflicting evidence is presented or a reasonable doubt is raised concerning the defendant's guilt, the defendant should be bound over for trial for the trier of fact to resolve those questions. *People v Redden*, 290 Mich App 65, 84; 799 NW2d 184 (2010). "Thus, charges should not be dismissed merely because the prosecutor has failed to convince the reviewing tribunal that it would convict. That question should be reserved for the trier of fact." *Perkins*, 468 Mich at 452.

When charging a defendant with involuntary manslaughter, there are multiple theories that are not mutually exclusive that may be appropriate under the circumstances. *People v Datema*, 448 Mich 585, 595-596; 533 NW2d 272 (1995). In the present case, the prosecution advanced a theory of gross negligence in failing to perform a legal duty.

> To support a bindover on involuntary manslaughter based on [the defendant's] omission to perform a duty, the prosecutor [is] required to submit evidence indicating the existence of a legal duty, [the defendant's] knowledge of the duty, that [the defendant] wilfully neglected or refused to perform said duty, that such failure was grossly negligent of human life, and that death was caused by [the defendant's] failure to perform [his] duty. [*People v Giddings*, 169 Mich App 631, 634-635; 426 NW2d 732 (1988).]

See also M Crim JI 16.13 (providing the elements for involuntary manslaughter for the failure to perform a legal duty).

The trial court granted defendant's motion for reconsideration and motion to quash the information and dismiss the case because it found that the prosecution failed to present sufficient evidence to establish probable cause that defendant was the proximate cause of Swift's death. The trial court erred because the evidence establishes probable cause that defendant was grossly negligent in his omission to perform a legal duty, and specifically, that defendant proximately caused Swift's death.

First, evidence was presented that defendant owed a legal duty to his students as their teacher. Under common law, "[a] teacher owes a duty to exercise reasonable care over students in his or her charge." *Cook v Bennett*, 94 Mich App 93, 98; 288 NW2d 609 (1979). Defendant concedes that he owed his students a duty of reasonable care. However, defendant disagrees that he owed the students a legal duty as a swim instructor under the Michigan Administrative Code. In relevant part, Mich Admin Code, R 325.2198(3)(e) provides that an instructor shall directly supervise his physical education class and that he must not engage in "[a]ctivities that would distract from the proper supervision of persons using the swimming pool or prevent immediate attention to a person in distress." The Michigan Public Pool Safety Guidelines for Schools, 2007 edition, clarifies that if a school staff member is instructing a physical education class involving a swimming pool, that instructor must also possess a lifeguard certification unless a separate lifeguard is also present. Michigan Public Pool Safety Guidelines for Schools, 2007 edition, pp 1-2. See also Rule 325.2198(3)(e). Additionally, if the swim instructor assumes the role of both instructor and lifeguard, he "must be watching *all* the students at the *same* time, which translates to having the students do the same activities throughout class or practice." Michigan Public Pool Safety Guidelines for Schools, 2007 edition, p 2.

Contrary to defendant's contention, he was acting in the capacity of a swim instructor at the time of the incident. Defendant was informed that he could not teach the swim class because he was a substitute teacher, but he chose to disregard that warning and teach the swim class. Defendant argues on appeal that James Reed was the individual who had the legal duty to act as the swim instructor because he was hired as the full-time physical education teacher. Defendant further points out that Reed was supervising the gym area at the time of the incident. It is irrelevant that Reed was hired as the full-time physical education and health teacher and that he left the swimming pool area on the day of the incident. The facts presented established defendant was still in charge of the swim class and had been for at least three weeks. Defendant chose to act in the capacity of a swim instructor without the proper certification. Had defendant undergone the proper training to supervise and instruct the swim class, he would have known that he was required to watch *all* of the students at the *same* time if a separate lifeguard was not present. Thus, defendant owed his students a duty to exercise reasonable care and a duty under the administrative code because he undertook the role of swim instructor on his own volition.

Second, evidence was presented that defendant knew of the facts that gave rise to his duties to exercise reasonable care over his students and to possess the necessary certification and training as a swim instructor. The principal's secretary, Sharon Oliver, testified that when defendant was hired on September 30, 2013, as a temporary long-term substitute teacher, he was explicitly informed that his role was limited to that of a substitute teacher and, as such, he was not allowed to teach the swim portion of the physical education and health class. In fact, Oliver stated that defendant was never issued a key to the pool. Shortly before the incident, when Oliver found out that defendant had been teaching the swim class, she told him "two or three times" to always be with Reed. This implies that (1) defendant knew he was in the supervisory role of a teacher, and (2) defendant was keenly aware that he was not granted permission to instruct the swim class because it may pose a risk to the students.

Third, evidence was presented that established defendant willfully neglected or refused to perform his duty of adequately supervising his students, i.e., providing reasonable care in his role

as a teacher, and obtain the necessary certification to render adequate assistance in the event of an emergency, which was grossly negligent to human life. Willful neglect or gross negligence

> requires evidence that [a defendant] had knowledge of the danger [his] failure to act would cause the child, the ability to avoid the harm, and that [he] failed to use care and diligence to prevent the danger when, to the ordinary mind, it must have been apparent that the result was likely to cause harm to the child. [*Giddings*, 169 Mich App at 635.]

See also M Crim JI 16.18. Generally, a violation of a rule, by itself, does not amount to gross negligence as courts must look to a defendant's actions under the totality of the circumstances, which may rise to the level of gross negligence and is a question of a fact ordinarily left for the jury to decide. *People v McCoy*, 223 Mich App 500, 504; 566 NW2d 667 (1997).

The prosecution presented evidence establishing probable cause that defendant knew of the danger that his failure to act could cause and had the ability to avoid the harm. Defendant knew that teaching a swim class was a dangerous activity that required him to exercise ordinary care to avoid the risk of injury to any of his students. Oliver stressed the importance of defendant never being alone while instructing the swim class. Additionally, the athletic director and two physical education teachers asked defendant on two occasions if he had his lifeguard certification, to which defendant replied, "Yes, I got this," and "[Y]es I have it." This implies that defendant knew he was placed in a situation that required ordinary care to avoid injury to those under his care. Defendant could have avoided the ultimate death of Swift by using ordinary care in properly supervising his classroom and implementing control in the classroom, rather than letting the students roam free. Likewise, defendant could have avoided the harm to Swift if he had undergone the proper training and certification to adequately render immediate assistance to Swift. Evidence was presented that defendant never received a lifeguard certification despite defendant's multiple statements that he had obtained the proper certification through the American Red Cross.

Furthermore, defendant failed to use care and diligence to prevent the danger when, to the ordinary mind, it would have been apparent that the result was likely to cause harm to the child. At the time of the incident, defendant was not in close proximity to the pool. He was in the bleachers with his back turned to the students in the pool who were swimming, which is contrary to the requirements of the code and guidelines. When several students alerted defendant that Swift was drowning, defendant leisurely walked down the stairs claiming that the students were "just playing." When defendant finally made it to the pool deck, he stood there for a moment before turning around and heading into the locker room for an unidentified amount of time. Defendant walked out of the locker room, removed his shirt, and "belly flopped" into the water. According to one student, defendant only went under the water once for about three seconds, but according to another student, defendant went under at least two or three times. However, all three students consistently testified at the preliminary examination that defendant claimed that the water was "too deep." Additionally, one student testified to hearing defendant say he could not swim.

A reasonable person under the circumstances would have adequately supervised the students by watching all of the students at the same time—especially those students in the

-4-

swimming pool—and appreciated the risk of potential harm by refusing to teach the swim class until he or she had obtained the proper certification required by the state. Defendant made the conscious decision, regardless of whether he was directed by another teacher to teach the class, to exceed the scope of his position as a substitute teacher, and to supervise and instruct the students despite knowing that he was not properly certified to instruct the students. Thus, when viewed in the totality of the circumstances, sufficient evidence was presented to establish that defendant willfully acted with disregard to the results that may follow his failure to adequately supervise the students and obtain the proper certification.

Finally, evidence was presented that established Swift's death was caused by defendant's failure to provide reasonable care over the students and obtain the necessary certification in order to instruct a swim class alone.

> [I]n the criminal law context, the term cause has acquired a unique, technical meaning. Specifically, the term and concept have two parts: factual causation and proximate causation. Factual causation exists if a finder of fact determines that "but for" defendant's conduct the result would not have occurred. A finding of factual causation alone, however, is not sufficient to hold an individual criminally responsible. The prosecution must also establish that the defendant's conduct was a proximate cause of, in this case, the accident or the victim's death. [*People v Feezel*, 486 Mich 184, 194-195; 783 NW2d 67 (2010) (opinion by CAVANAGH, J.) (quotation marks and citations omitted).]

"Proximate causation is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural." *Id*. at 195 (quotation marks and citation omitted). "The phrase 'the proximate cause' is a legal colloquialism reflecting the reality that, particularly in homicide cases, there is almost invariably only one *culpable* act that could be considered a direct cause," but the "phrase *does not imply that a defendant is responsible for harm only when his act is the sole antecedent*." *People v Tims*, 449 Mich 83, 96; 534 NW2d 675 (1995) (second and third emphasis added).

We conclude that the prosecution established probable cause that, but for defendant's conduct, Swift's death would not have occurred. Under proper supervision, defendant would have coordinated the swim class and advised Swift not to jump into the deep end of the pool. Even if Swift did jump into the pool, defendant could have saved him utilizing the pool's safety equipment. Accordingly, we conclude that the prosecution presented sufficient evidence regarding factual causation.

The trial court believed the ultimate issue was whether defendant was the proximate cause of Swift's death. In resolving the issue, the trial court relied on *Beals v Michigan*, 497 Mich 363; 871 NW2d 5 (2015), ultimately finding the holding in *Beals* instructive in this case despite the fact that *Beals* dealt with proximate cause in a civil case involving a governmental employee. In *Beals*, the decedent, who had been swimming independently for years and who was known as an "accomplished swimmer," drowned while the defendant, a certified lifeguard, was on duty. *Id*. at 366-367. In relevant part, the decedent's mother brought an action for gross negligence against the lifeguard for failing to act. *Id*. at 367-368. The *Beals* Court ultimately held that the lifeguard's failure to intervene in the decedent's drowning was not "the one most

immediate, efficient, and direct cause" of the decedent's death. *Id*. at 373. The *Beals* Court reasoned that the lifeguard did not cause the decedent to enter the pool and swim to the deep end, nor did the lifeguard cause the decedent to remain submerged in the water. *Id*.

The trial court erred by relying on *Beals* for several reasons. First, the test for proximate cause in *Beals* differs from the test for proximate cause in this case. Namely, in a criminal case, the proper test is whether the defendant's conduct was "a" proximate cause of the victim's death. See *Tims*, 449 Mich at 96-97. In contrast, in *Beals*, our Supreme Court was interpreting the phrase "the proximate cause," which appears in the relevant statute governing tort liability for the gross negligence of a governmental employee. *Beals*, 497 Mich at 372. In order to establish that the defendant was "the" proximate cause, the plaintiff was required to establish that the defendant's grossly negligent conduct was "the one most immediate, efficient, and direct cause" of the injury. *Id*. at 371 (citation and quotation marks omitted). Such a requirement does not exist in this case. Moreover, *Beals* is factually distinguishable from the present case. Unlike the decedent in *Beals*, there was no evidence presented that Swift was an accomplished swimmer. Quite the contrary, as evidence was presented that Swift did not know how to swim. It can be inferred that as Swift's swim instructor, defendant should have been privy to this information and, as such, supervised the students who could not swim more closely. Likewise, unlike the lifeguard in *Beals* who possessed a lifeguard certification, defendant did not. See *id*. at 367. Additionally, the lifeguard in *Beals* reacted immediately once he was alerted the decedent was drowning, whereas defendant did not. See *id*.

The trial court improperly chose to focus on defendant's "brief hesitation" before attempting to save Swift in resolving the proximate cause issue, but the facts established much more than that. Evidence was presented that defendant's cumulative omissions were "a" direct cause in Swift's death. It was foreseeable that defendant's failure to properly instruct and test the students on their swimming ability would result in injury when students were *required* to swim every day. This foreseeability of injury was heightened when defendant would regularly allow the students to do whatever they pleased, such as the students "[d]iving off the diving board, students throwing the knee boards, using the shepherds hook to trip people, [and] people being in the locker rooms." Additionally, on the day in question, it was foreseeable that a student in the pool or around the pool would be injured when defendant had his back toward the pool making him oblivious to what the students were doing, and that defendant would be unable to save a student in peril when he could not swim himself.

While it could be argued that Swift was also negligent in jumping into the pool knowing that he could not swim, a victim's negligence is only a factor to consider in evaluating a defendant's actions, but it is not a defense. See *Tims*, 449 Mich at 97-99. Thus, the district court did not abuse its discretion by binding defendant over for trial. Sufficient evidence, and inferences arising therefrom, was presented that defendant was grossly negligent in his failure to supervise and provide immediate assistance to a child under his care. Accordingly, the trial court abused its discretion by quashing the information and dismissing the case. The prosecution is entitled to the reinstatement of the sole charge of involuntary manslaughter against defendant.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra