*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DAVID MICHAEL BARBER,

       Defendant-Appellant.

UNPUBLISHED
August 26, 2021

No. 352361
Antrim Circuit Court
LC No. 19-004936-FH

Before: STEPHENS, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of involuntary manslaughter, MCL 750.321, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] Defendant was sentenced to serve consecutive terms of 3 to 15 years' imprisonment for involuntary manslaughter and two years' imprisonment for felony-firearm. We affirm.

## I. BACKGROUND

This case arises from defendant's accidental fatal shooting of Justin Beutel on November 15, 2018, the opening day of deer hunting season in Michigan. Defendant was hunting on private property owned by members of Beutel's family without their consent. Defendant saw what he believed was a deer standing up and quickly fired his gun from 55 yards away. Upon closer inspection, defendant realized that he had actually shot a man who was attending to a deer that had already been killed. Defendant sought emergency assistance, but Beutel died from the gunshot wound.

## II. JURY INSTRUCTION

---

[1] Defendant was also convicted of trespass, MCL 750.552, but he does not contest that conviction. Defendant was sentenced to serve four days' imprisonment for trespass.

Defendant argues that he is entitled to a new trial because the model jury instruction defining gross negligence, which was read at his trial, does not comport with Michigan law. We disagree.

Questions of law involving jury instructions are reviewed de novo, and a trial court's decision concerning whether a jury instruction is applicable to the facts of a case is reviewed for abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Bergman*, 312 Mich App 471, 483; 879 NW2d 278 (2015).

MCR 2.512(B)(2) provides, "Before or after arguments or at both times, as the court elects, the court shall instruct the jury on the applicable law, the issues presented by the case, and, if a party requests . . . that party's theory of the case." The trial court "must properly instruct the jury so that [the jury] may correctly and intelligently decide the case. The instruction to the jury must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (quotation marks and citations omitted). The Michigan Court Rules require the reading of Michigan's Model Jury Instructions if the instructions "are applicable," the instructions "accurately state the applicable law," and the instructions "are requested by a party." MCR 2.512(D)(2).

Defendant was convicted of involuntary manslaughter. "Involuntary manslaughter is a catch-all crime that encompasses all homicides that do not constitute murder, voluntary manslaughter, or a justified or excused homicide." *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018) (quotation marks and citations omitted). "Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, *or in negligently doing some act lawful in itself*, or by the negligent omission to perform a legal duty." *People v Townes*, 391 Mich 578, 590; 218 NW2d 136 (1974) (quotation marks and citation omitted; emphasis added). "The negligence required to establish involuntary manslaughter is different in kind from ordinary negligence. Such negligence is variously referred to as 'criminal negligence' or 'gross negligence' and has been discussed thoroughly in several cases." *Id*. at 590-591 n 4. "Gross negligence means wantonness and disregard of the consequences that may ensue. Wantonness exists when the defendant is aware of the risks but indifferent to the results; it constitutes a higher degree of culpability than recklessness." *Head*, 323 Mich App at 532.

In this case, the relevant instructions were adapted from M Crim JI 16.10 and M Crim JI 16.18:

> Now, the defendant is charged with the crime of involuntary manslaughter. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the defendant caused the death of Justin Beutel. That is, that Justin Beutel died as a result of the defendant's discharge of a firearm, while hunting, at an object without clearly identifying the object and/or without

-2-

determining it was safe to fire. Second, that in doing the act, it [sic] caused Justin Beutel's death, the defendant acted in a grossly negligent manner.

Gross negligence means more than carelessness. It means willfully disregarding the results to others that might follow from an act or failure to act. In order to find that the defendant was grossly negligent, you must find each of the following three things beyond a reasonable doubt:

First, that the defendant knew of a danger to another. That is, he knew there was a situation that required him to take ordinary care to avoid injuring another. Second, that the defendant could have avoided injuring another by using ordinary care. And, third, that the defendant failed to use ordinary care to prevent injuring another when, to a reasonable person, it must have been apparent that the result was likely to be serious injury.

Defendant's argument that this instruction did not accurately define gross negligence has already been raised before and rejected by this Court. See *People v Cummings*, 229 Mich App 151, 157; 580 NW2d 480 (1998), rev'd on other grounds 458 Mich 877 (1998). In *Cummings*, the defendant also killed a person by shooting at what he erroneously believed was a deer on the opening day of Michigan's deer hunting season. *Id*. at 153. The defendant was charged with involuntary manslaughter and the court gave jury instructions that were substantially identical to the instructions at issue in this case. *Id*. at 156-157. This Court held that the instructions "properly defined gross negligence." *Id*. at 157. We are bound to follow this opinion; accordingly, we reject defendant's argument. MCR 7.215(C)(2).

## III. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that the prosecution failed to offer sufficient evidence to convict defendant of involuntary manslaughter and felony firearm. We disagree.

We review de novo challenges to the sufficiency of the evidence. *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019). To decide "whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). "Circumstantial evidence and reasonable inferences drawn from it may be sufficient to establish the elements of a crime." *People v Fennell*, 260 Mich App 261, 270; 677 NW2d 66 (2004). "It is the province of the jury to determine questions of fact and assess the credibility of witnesses[.]" *People v Odom*, 276 Mich App 407, 419; 740 NW2d 557 (2007).

In regards to his involuntary manslaughter conviction, defendant argues that his actions did not amount to gross negligence because he was unaware of the risk of injury to a human while shooting at the deer. In order to show gross negligence, the following elements must be established:

(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.

-3-

(2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.

(3) The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. [*People v McCoy*, 223 Mich App 500, 503; 566 NW2d 667 (1997) (quotation marks and citations omitted).]

Defendant told the investigating officer that he had been hunting his entire life. Multiple witnesses testified that the goal when firing a gun while hunting was to kill the target. Further, that hunters should avoid taking quick shots because the goal is to kill whatever is shot. Defendant told the investigating officer that he "shot without hesitating." Defendant was hunting on private property with no-trespassing signs posted. The shooting occurred on the busiest hunting day of the year. The victim was wearing an orange hat and had several belongings out in the area. Defendant made statements to the investigating officer implying that the victim may not have died if defendant had taken a little bit longer prior to shooting. From these facts a jury could conclude that defendant knew that he needed to exercise ordinary care while hunting to avoid injuring a person. Because defendant shot and killed the victim, the jury could have inferred that the victim would not have been killed had the defendant taken more time to identify what he was shooting. Moreover, the jury could also infer that failing to use ordinary care when firing a gun, given the intent to kill the target, could be disastrous to another.[2]

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher

---

[2] Defendant also asserted, in his Statement of Questions Presented, a challenge to his felony-firearm conviction, but thereafter abandoned the challenge for failure to fully brief the issue. *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).