*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOHN FREDERICK VARNDELL, JR,

Defendant-Appellant.

UNPUBLISHED
November 22, 2022

No. 358307
St. Clair Circuit Court
LC No. 20-001666-FH

Before: GLEICHER, C.J., and SERVITTO and YATES, JJ.

PER CURIAM.

A jury convicted John Frederick Varndell, Jr. of one count of involuntary manslaughter, MCL 750.321; two counts of possession of a firearm in the commission of a felony (felony-firearm), second offense, MCL 750.227b(1); felon in possession of a firearm (felon-in-possession), MCL 750.224f(1); and felon in possession of ammunition, MCL 750.224f(6), for the shooting death of his 11-year-old stepson during a deer hunt. Varndell contends that the prosecution presented insufficient evidence to support that he acted with the gross negligence necessary to convict him of involuntary manslaughter and its attendant felony-firearm charge. The record more than adequately supports that Varndell was grossly negligent. We affirm.

## I. LEGAL STANDARDS

We review de novo a challenge to the sufficiency of the evidence, reviewing the evidence and all reasonable inferences in the light most favorable to the prosecution to determine if a rational trier of fact could find the elements of the charged offense proven beyond a reasonable doubt. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). To convict a defendant of involuntary manslaughter, the prosecution must establish beyond a reasonable doubt that the defendant unintentionally killed another "with a lesser mens rea of gross negligence or an intent to injure, and not malice." *People v McMullan*, 284 Mich App 149, 152; 771 NW2d 810 (2009) (quotation marks and citation omitted). The prosecution never suggested that Varndell intended to injure his stepson; accordingly, the prosecution was required to establish gross negligence.

Gross negligence for the purpose of involuntary manslaughter has been described as "acting carelessly in such a manner that manifests a reckless disregard for another's life." *People*

-1-

*v Fredell*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 351971); slip op at 8 (cleaned up). This Court has also described that "[g]ross negligence means wantonness and disregard of the consequences that may ensue. Wantonness exists when the defendant is aware of the risks but indifferent to the results; it constitutes a higher degree of culpability than recklessness." *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018) (citations omitted). To establish gross negligence the following elements must be proven:

> (1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.
>
> (2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.
>
> (3) The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. [*People v McCoy*, 223 Mich App 500, 503; 566 NW2d 667 (1997) (citations omitted).]

## II. ANALYSIS

Varndell exhibited a reckless disregard for life and had the ability to avoid causing harm. He engaged in risky behavior with a firearm in the dark and in the presence of a large group of people, including children. On the day of the shooting, Varndell and several family members were visiting rural property in Michigan. Several individuals decided to hunt deer as part of the Michigan youth hunt. Varndell supervised his 11-year-old stepson. Varndell shot a deer, but the wounded animal fled. As darkness settled in, eight people (six adults and two children) wandered into the woods to find the injured deer. Varndell was armed with a .9 millimeter handgun during the search despite that he was a convicted felon whose right to carry a firearm had not been restored. Moreover, Varndell concealed the weapon from his fellow hunters. And Varndell chose to arm himself and go hunting despite that he had been using marijuana throughout the day.

Violation of a statute creates a "presumption of ordinary negligence, not gross negligence." *Wood v Detroit*, 323 Mich App 416, 425 n 6; 917 NW2d 709 (2018). In this case, however, Varndell increased the danger of an already dangerous activity involving firearms by failing to follow laws and regulations. Varndell described that he was a lifelong hunter well versed in hunter safety. Despite his knowledge, Varndell made several risky decisions.

The prosecution presented evidence that during a youth hunt, only minors are permitted to carry a loaded weapon, not the supervising adult. Yet, Varndell fired the shot that wounded the deer. The supervising adult must have a hunting license, and must keep the youth within arm's reach at all times. MCL 324.43517(2)(a); Wildlife Conservation Order, 2.14(1)(e), available at <https://www.michigan.gov/-/media/Project/Websites/dnr/Documents/Orders/ Wildlife-Conservation-Order/ChapterII.pdf?rev=3c56ee93d9914dafbdfd7faf9c3f9bdd> (accessed October 26, 2022). Varndell was not authorized to supervise any youth hunter as he did not have a hunting license. Moreover, he did not keep his stepson within arm's reach. Rather, when the party went into the woods to search for the wounded animal, everyone spread out in a line with about 15 feet in between them. None were wearing safety orange as required by state law. MCL 324.40116(1).

The party went into the woods in the dark and after hunting hours had ended for the day. See Wildlife Conservation Order, 2.5(1) (hunting hours run from "one half-hour before sunrise to one-half hour after sunset").

After five to 10 minutes, the party broke into two groups. Varndell and his stepson separated, against youth hunt protocol. Shortly thereafter, Varndell walked away from his group and headed toward the other group. Before he reached them, Varndell yelled, "I got the deer." Another adult in the party replied: "Are you sure it's the deer?" Varndell responded, "Yes," and fired the .9 millimeter pistol *eight* times.[1] Two of the shots struck Varndell's stepson in the head, killing him.

Clay Township Police Chief Michael Koach testified that using a pistol with fully encapsulated rounds to hunt was unusual and unsafe. A pistol is less accurate than other long-range hunting weapons, and fully encapsulated bullets tend to "go through the animal and keep travelling." It is also unusual for a hunter to shoot more than once to kill game. Chief Koach asserted that hunters should "never do anything as far as rapid fire." He further opined, "[W]hat that tells [him] is you do not have an accurate sight picture to begin with and you do not have an accurate picture of what you were aiming at."

Several witnesses testified that Varndell smoked marijuana throughout the day. Varndell reportedly smoked marijuana only 20 minutes before he fired the fatal shots and while he searched the woods for the wounded deer. Approximately four hours after the shooting, a registered nurse took a sample of Varndell's blood. The sample contained five nanograms per milliliter of Delta-9-tetrahydrocannabinol (THC), the active ingredient in marijuana, and 25 nanograms per milliliter of carboxy THC, the inactive metabolite caused by the body breaking down THC. The prosecution presented evidence that THC concentration is at its highest five to 15 minutes after an individual smokes marijuana. Experts agree that marijuana can impact an individual's judgment and reaction times. Further, witnesses informed the jury that it is illegal to hunt under the influence. Despite the witness testimony and the positive blood tests, Varndell denied using any substances that day. "A jury may infer consciousness of guilt from evidence of lying or deception." *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008).

Later investigation into the circumstances of the shooting revealed that Varndell fired his weapon in the dark, outside of legal hunting hours. Moreover, the location of the spent bullet casings suggested that Varndell did not fire in a direct line and was instead moving the pistol around as he shot.

Ultimately, the evidence demonstrated that Varndell was intoxicated by marijuana and covertly carrying a loaded pistol when he went into the woods, after dark, with a group of eight people, including children. Despite knowing that his fellow searchers were spread throughout the woods and not wearing safety orange, Varndell began shooting into the dark when he thought he saw the deer. Varndell swayed with intoxication as he rapidly fired eight rounds. This behavior was grossly negligent and caused the death of an 11-year-old child. Accordingly, the prosecution

---

[1] Varndell's pistol was actually loaded with 14 rounds.

presented sufficient evidence to support Varndell's conviction of involuntary manslaughter and its attendant felony-firearm charge.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Christopher P. Yates