*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ERIC JERMAINE COMPTON,

        Defendant-Appellant.

UNPUBLISHED
December 11, 2025
8:52 AM

No. 369967
Macomb Circuit Court
LC No. 2022-000984-FH

Before: TREBILCOCK, P.J., and PATEL and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of operating while intoxicated (OWI) causing death within seven years of a prior conviction, MCL 257.625(4)(b); and OWI causing serious impairment within seven years of a prior conviction, MCL 257.625(5)(b). Defendant was sentenced as a third-offense habitual offender, MCL 769.11, to 20 to 40 years' imprisonment for the conviction for OWI causing death within seven years of a prior conviction and 9 to 20 years' imprisonment for the conviction for OWI causing serious impairment within seven years of a prior conviction, to be served consecutive to any sentence defendant may receive for parole violation. We affirm.

This case arises out of a motor-vehicle collision that took the life of Bradley Ruff (Bradley) and severely injured his wife, Patricia Ruff (Patricia). According to an eyewitness to the accident, defendant failed to stop at a stop sign. His sport utility vehicle then struck Bradley's motorcycle as the Ruffs, having the right of way, entered the intersection. Shortly after the accident, defendant left the scene with his fiancée, purportedly to take their minor son back to their house, which was a few blocks away. An officer at the scene followed the couple to their home, and defendant was brought back to the scene soon after. A blood draw later revealed that defendant had a blood alcohol level of 0.191, which was more than twice the legal limit. Bradley, who had been operating the motorcycle, died at the scene, and an autopsy would later reveal that his blood alcohol level was 0.125, which was also over the legal limit of 0.08. MCL 257.625(1)(b). Video from a camera that Bradley passed about five seconds before the accident suggested that he was likely speeding, but a witness to the accident testified that the motorcycle slowed as it reached the intersection.

-1-

At sentencing, the court indicated that it considered the sentencing guidelines, the presentence investigation report (PSIR), and defendant's sentencing memorandum. Before imposing the sentence, the court addressed defendant directly:

> You know, Mr. Compton, I think you're remorseful now, now that we're standing here, the jury's returned a verdict, but . . . remorseful about the impending sentence. And I get that. And I also get the fact that any day, any given hour the choices we make can have life-long effects for so, so many people, your family included. But the Ruff family, you know, they didn't do anything wrong and the jury didn't believe or [buy] any of the arguments that were made at trial. And after sitting here seeing what I saw and listening to what I heard, I think the jury made the right choice.

The court then imposed a sentence at the top of the guidelines' recommendations for both counts. Defendant now appeals.

## I. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first argues the prosecution did not present sufficient evidence from which the jury could find beyond a reasonable doubt that defendant was a proximate cause of the death of Bradley and serious injuries of Patricia. Bradley's conduct, defendant argues, was grossly negligent and therefore a superseding cause that relieved defendant of criminal liability. We disagree.

A defendant's challenge to the sufficiency of the evidence supporting his conviction is reviewed de novo. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). The evidence is reviewed in "a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt." *Id*. The jury determines what inferences are fairly drawn from the evidence and the weight to be accorded them, *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002), and appellate courts "do not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence," *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).

In proving OWI causing death, the prosecution must establish beyond a reasonable doubt that

> (1) the defendant was operating his or her motor vehicle in violation of MCL 257.625(1), (3), or (8); (2) the defendant voluntarily decided to drive, knowing that he or she had consumed an intoxicating agent and might be intoxicated; and (3) the defendant's operation of the motor vehicle caused the victim's death. [*People v Schaefer*, 473 Mich 418, 434; 703 NW2d 774 (2005), overruled in part on other grounds by *People v Derror*, 475 Mich 316, 332-333 (2006), which was, in turn, overruled in part on other grounds by *People v Feezel*, 486 Mich 184, 204 (2010).]

OWI causing death and OWI causing serious impairment "have the same elements except for the injury sustained." See MCL 257.625(4)-(5); *Schaefer*, 473 Mich at 434.

The causation element of an offense consists of two distinct parts: factual cause and proximate cause. *Schaefer*, 473 Mich at 435. Factual causation, often called "but-for causation," exists when a result would not have occurred "but for" a defendant's conduct. *Id*. at 435-436. Proximate causation, on the other hand, "is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural." *Id*. at 436. For conduct to be regarded as a proximate cause, the injury suffered must be a "direct and natural result" of that conduct. *Id*. Put another way, "a proximate cause is simply a factual cause of which the law will take cognizance." *Id*. (quotation marks and citation omitted).

However, when some other cause intervenes, that intervening cause is said to supersede the defendant's conduct and sever proximate cause if such an intervention is deemed unforeseeable. *Id*. at 436-437. Because the ordinary negligence of another is considered reasonably foreseeable, it cannot be a superseding cause. *Id*. at 439. Gross negligence, in contrast, "break[s] the causal chain between the defendant and the victim" because it is not considered reasonably foreseeable. *Id*. at 437.

But a victim's gross negligence is not a complete defense, because there can be more than one proximate cause of an injury. *People v Tims*, 449 Mich 83, 96-97; 534 NW2d 675 (1995). Thus, for a defendant to be held criminally liable, his or her conduct need only be a proximate cause rather than the sole proximate cause of the injury. *Id*.

Gross negligence is more than just an enhanced form of ordinary negligence. *Schaefer*, 473 Mich at 438. Rather, gross negligence refers to a " 'wantonness and disregard of the consequences which may ensue . . . .' " *Feezel*, 486 Mich at 195, quoting *People v Barnes*, 182 Mich 179, 198; 148 NW 400 (1914). "Wantonness," in turn, is defined as " '[c]onduct indicating that the actor is aware of the risks but indifferent to the results' and usually 'suggests a greater degree of culpability than recklessness.' " *Feezel*, 486 Mich at 196, quoting *Black's Law Dictionary* (8th ed) (alteration in original).

For example, intoxication alone is not conduct that amounts to gross negligence, though "extreme intoxication" may be probative of gross negligence because it can affect a victim's ability "to perceive the risks posed by his conduct and diminish[] his capacity to react to the world around him." *Feezel*, 486 Mich at 199. Similarly, simply driving above the posted speed limit is not by itself sufficient to establish gross negligence, but a jury could determine, for example, that driving 100 miles per hour in a residential neighborhood constitutes gross negligence. *People v McCoy*, 223 Mich App 500, 504; 566 NW2d 667 (1997). Ultimately, "the appropriate consideration is . . . whether [an individual] acted with gross negligence under the totality of the circumstances." *Id*.

Defendant argues that Bradley was grossly negligent when he drove his motorcycle above the speed limit while intoxicated. And because Bradley was grossly negligent, his conduct amounts to a superseding cause that relieves defendant of criminal liability. We disagree.

The exact speed at which Bradley was driving was never conclusively established at trial. To be sure, responding officers who reviewed the video from the day of the accident testified that Bradley was "going fast" and "moving." However, audio from that same video footage suggests that Bradley was no longer accelerating the motorcycle as he approached the intersection. And while the view of the accident provided by the video is distant, oblique, and obscured, the

accident's sole eyewitness testified that: she had a "clear view" of the accident, Bradley slowed his vehicle as he approached the intersection, he looked to see if traffic was clear, and defendant entered the intersection without stopping at his stop sign, at which time his vehicle struck the motorcycle. The witness also said that she did not see defendant's vehicle slow down or brake at all. Given this Court's obligation to review the evidence in the light most favorable to the prosecution, it cannot be said that Bradley was traveling fast enough to support a finding of gross negligence. Further, while the residential setting of the intersection collision is relevant, that fact is insufficient to transform otherwise ordinary negligence into gross negligence. Additionally, while Bradley's blood alcohol level was above the legal limit, defendant's blood alcohol level was more than double the legal limit. Considering these factors in their totality, we conclude that a rational jury could have determined Bradley's conduct, while negligent, was not grossly negligent or a superseding cause of the accident, and therefore sufficient evidence supported defendant's convictions.

## II. PROPORTIONALITY OF SENTENCE

Defendant also argues that his sentence was disproportionate and thus unreasonable because the trial court failed to consider the relevant mitigating factors outlined in defendant's PSIR and sentencing memorandum, and focused exclusively on the shocking nature of the visual evidence offered at trial. We disagree.

"[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

Sentences imposed by a trial court must be reasonable. See *People v Posey*, 512 Mich 317, 354-356; 1 NW3d 101 (2023) (opinion by BOLDEN, J.). A sentence is reasonable when it is "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 459-460 (quotation marks and citation omitted). Although the sentencing guidelines are no longer binding, "a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence." *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). Sentences that are within the applicable sentencing guidelines range enjoy a nonbinding rebuttable presumption of proportionality, and it is a defendant's burden to overcome that presumption. *Posey*, 512 Mich at 357, 360 (opinion by BOLDEN, J.). "[T]rial courts are not required to expressly or explicitly consider mitigating factors at sentencing. *People v Barnes*, 332 Mich App 494, 507; 957 NW2d 62 (2020) (quotation marks and citation omitted). But, in assessing the proportionality of a sentence, "four basic sentencing considerations" have long been acknowledged as important: "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183, 188; 987 NW2d 58 (2022), citing *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). "However, these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *Boykin*, 510 Mich at 183-184.

Whatever factors are ultimately considered, a trial court is required to articulate its reasoning for imposing a particular sentence, though if it imposes a sentence within the guidelines, it satisfies this obligation by simply stating that it relied on the guidelines. *People v Broden*, 428 Mich 343, 350-351, 353-354; 408 NW2d 789 (1987). The articulation requirement is also satisfied if it is clear from context that the court relied on the sentencing guidelines. *People v Conley*, 270 Mich App 301, 313; 715 NW2d 377 (2006).

We conclude that the court did not abuse its discretion when imposing defendant's sentence, because it is apparent from the sentencing transcript that the court consulted not only the sentencing guidelines, but also the PSIR and defendant's sentencing memorandum. In addition, the information contained in those documents does not support the conclusion that defendant's sentence was unreasonable and therefore disproportionate.

The sentencing court's obligation to articulate its reasoning for imposing defendant's sentence was satisfied when the court recognized and took notice of the guidelines, PSIR, and defendant's sentencing memorandum:

> *The Court*: And then we also changed the guidelines. The guidelines on Count 1 are 117 to 240; is that right?
>
> [*Defense Counsel*]: Correct, your Honor.
>
> [*Prosecutor*]: Yes, Judge.
>
> *The Court*: Then on Count 2, 43 to 114, at least that's what's in the [PSIR], right?
>
> [*Defense Counsel*]: Correct, your Honor.
>
> [*Prosecutor*]: Yes, Judge.
>
> *The Court*: So [defense counsel] on behalf of Mr. Compton, any corrections, additions, or deletions to our most recent updated presentence report?
>
> * * *
>
> [*Defense Counsel*]: . . . I did file a sentencing memorandum, your Honor, and . . . I am challenging the scoring on one of the [offense variables].
>
> *The Court*: With OV 12?
>
> [*Defense Counsel*]: With OV 12, yes, your Honor.
>
> * * *
>
> *The Court*: Yeah, and I agree with you too [defense counsel]. There was an actual not guilty on that one count.

-5-

[*Defense Counsel*]: Thank you, Your Honor.

*The Court*: So OV 12 then should be zero as opposed to five.

[*Defense Counsel*]: Correct, your Honor.

*The Court*: On each count. Then the total OVs would be 80.

[*Prosecutor*]: Yes, Judge.

[*Defense Counsel*]: Correct, your Honor.

*The Court*: Okay. And does that change the guidelines, I didn't look at that?

[*Prosecutor*]: It does not.

[*Defense Counsel*]: It does not, your Honor.

Defense counsel then declared that she very clearly communicated to defendant the basis for his sentence: "I do know what the guidelines are. I have discussed them with Mr. Compton. He's aware of what the guidelines are. I know the recommendation is for 120 months." These exchanges show that the court relied on the guidelines—in addition to the PSIR and sentencing memorandum—when considering defendant's sentence. Therefore, the court did all that is required of it before imposing a sentence that is within the sentencing-guidelines range.

Although the court did not expressly consider mitigating factors detailed in both the PSIR and defendant's sentencing memorandum, the court was under no obligation to do so. *Barnes*, 332 Mich App at 507. In any event, defendant's PSIR details factors that more than justify the sentence imposed, even in light of those mitigating factors. As the PSIR notes, defendant was a gainfully employed small-business owner who played an active and involved role in the lives of his two children and four stepchildren. But he also has an extensive prior criminal history consisting of three misdemeanor and five felony convictions (not including his two felony convictions in this matter) and was on parole at the time he caused Bradley's death. It merits noting that two of those misdemeanor convictions are for charges relating to driving while intoxicated in 2002 and 2014. As the prosecution notes in its brief on appeal, the similarity of these offenses to defendant's convictions in this matter and the fact that these offenses span more than two decades suggest that rehabilitation is unlikely.

Ultimately, defendant has not met his burden to overcome the rebuttable presumption that his within-guidelines sentence was proportionate, and therefore reasonable. The trial court did not abuse its discretion by limiting its analysis to the extent it did when imposing defendant's sentence, because defendant's sentence was within the range suggested by the guidelines, defendant fails to

overcome the presumption of proportionality, and it is clear from the record that the sentencing court consulted the guidelines, PSIR and defendant's sentencing memorandum when making its determination.

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Sima G. Patel
/s/ Randy J. Wallace