# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

## PEOPLE v MORGAN

Docket No. 167492. Argued October 8, 2025. Decided June 24, 2026.

Michael M. Morgan was charged in the 53rd District Court with moving violation causing death, MCL 257.601d(1), as the result of a collision between the car he was driving and a motorcycle driven by Donald D. Arnold, who later died from his injuries. Eyewitness testimony indicated that the decedent had accelerated quickly after a traffic light turned green and that he struck the side of defendant's vehicle as defendant was attempting a U-turn. Defendant moved to admit evidence that the decedent might have reached a speed exceeding 20 miles per hour over the posted limit before the collision, as well as evidence that the decedent's blood alcohol concentration (BAC) at the time of the collision might have been as high as 0.071 to 0.081 g/dL. The district court, Daniel B. Bain, J., ruled that the speed evidence was admissible but the BAC evidence was not, and the Livingston Circuit Court, Matthew J. McGivney, J., denied defendant's application for leave to appeal that ruling. After granting defendant's interlocutory application for leave to appeal, the Court of Appeals, RIORDAN and CAMERON, JJ. (MARKEY, P.J., dissenting), affirmed in an unpublished per curiam opinion issued August 8, 2024 (Docket No. 367789), on the ground that *People v Feezel*, 486 Mich 184 (2010), required a preliminary showing of gross negligence before evidence of intoxication was admissible and, because no such showing had been made with respect to the decedent's conduct, the district court did not abuse its discretion by excluding the BAC evidence. Defendant sought leave to appeal in the Supreme Court, which ordered oral argument on the application and directed the parties to file supplemental briefing addressing (1) whether evidence of the decedent's BAC is relevant, and (2) whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice. 516 Mich 924 (2024).

In an opinion by Justice HOOD, joined by Chief Justice CAVANAGH and Justices BERNSTEIN, WELCH, BOLDEN, and THOMAS, the Supreme Court *held*:

The district court abused its discretion by excluding the evidence of the decedent's possible intoxication. Under *Feezel*, evidence of a victim's BAC must merely have *any* tendency to make gross negligence on the part of the victim more or less probable. In this case, the BAC evidence was relevant under MRE 401 because it was probative of proximate causation in light of other admissible conduct, and it was admissible under MRE 403 because the risk of unfair prejudice was low compared to the evidence's probative value in determining whether the decedent's

intoxication, speed, and acceleration constituted gross negligence or a superseding cause of the collision. The district court abused its discretion by considering the evidence in isolation rather than as part of the comprehensive body of evidence that could inform the jury's decision on proximate cause and also by excluding, without a clear rationale, evidence of intoxication while admitting evidence of speeding.

 1. To convict a defendant of moving violation causing death, MCL 257.601d(1), the prosecution must prove beyond a reasonable doubt that the defendant caused a death by committing a moving violation while operating a motor vehicle on a highway or other place open to the public. The causation element of MCL 257.601d(1) has two parts—factual and proximate— and the prosecution is required to prove both parts. Factual causation exists if a fact-finder determines that but for defendant's conduct, the result would not have occurred. Proximate causation requires a finding that the victim's injury was a direct and natural result of the alleged criminal conduct, with no intervening cause that superseded the defendant's conduct and broke the causal link between the defendant's conduct and the victim's injury. Whether an intervening cause supersedes a defendant's conduct is a question of reasonable foreseeability. Ordinary negligence is reasonably foreseeable, so it cannot be a superseding cause that would sever the causal link between the defendant's conduct and the victim's harm, whereas a victim's gross negligence or intentional misconduct is sufficient to break the causal chain because it is not reasonably foreseeable.

 2. The district court erred by excluding evidence of the decedent's BAC as irrelevant under MRE 401. The evidence of intoxication was material because the charged crime required the prosecution to prove an element of causation beyond a reasonable doubt. It was also probative because, under *Feezel*, evidence of the victim's BAC must merely have *any* tendency to make gross negligence on the part of the victim more or less probable. While neither intoxication nor speeding, standing alone, might have been relevant under *Feezel*, in this case, those two pieces of evidence occurred together. As a result, the decedent's alleged speeding and high rate of acceleration must be considered in light of his possible intoxication, and his possible intoxication must be considered in light of his alleged speeding and high rate of acceleration. Applying *Feezel* to these facts led to the conclusion that the decedent's BAC was relevant. The lower courts misapplied principles from *Feezel*, which held that, generally, the mere fact that a victim was intoxicated when the defendant committed a crime is not sufficient to render evidence of the victim's intoxication admissible and that being intoxicated, by itself, is not conduct amounting to gross negligence. But *Feezel* did not set a floor for the level of intoxication that is relevant, it did not set a floor for the type of conduct that opens the door to consideration of intoxication, and it did not strictly analyze intoxication or conduct in isolation. Further, by admitting the evidence of the decedent's speeding—which appeared to bear on one issue, causation—the district court implicitly determined that gross negligence was in issue. Accordingly, the jury may consider the role intoxication played in the decedent's possible speeding, his rates of acceleration, and his ability to react to defendant's allegedly unlawful U-turn.

 3. The district court also erred by excluding evidence of the decedent's BAC under MRE 403. The evidence was not unfairly prejudicial because the decedent's possible speeding and rapid acceleration on a motorcycle after possibly drinking went to the heart of whether he was grossly negligent and therefore related directly to the disputed element of proximate causation. Though

the conduct was less egregious and the intoxication was less pronounced than that in *Feezel*, the combination—if a jury believed that evidence—would be not merely marginally probative but potentially critical to the issue of causation.

Court of Appeals judgment reversed, district court order vacated, and case remanded to the district court for further proceedings.

Justice ZAHRA, dissenting, concluded that, taken together with evidence of the decedent's speed and operation of his motorcycle, the BAC evidence did not create a jury-submissible question of fact on the issue of gross negligence because it demonstrated, at best, ordinary negligence. He stated that without more evidence bearing on gross negligence, the BAC evidence served a minimal probative purpose but carried a high risk of unfair prejudice and should therefore have been excluded under MRE 403. He noted that even if the Court disagreed with the district court's conclusion, reversal would not have been warranted absent a finding that the district court had abused its discretion, and in this case the district court's conclusion did not fall outside the principled range of outcomes. He stated that, in sum, the majority opinion fell short by undermining the spirit of *Feezel*'s statement that evidence of intoxication alone is not enough to put gross negligence at issue, giving short shrift to caselaw suggesting that defendants must present evidence of gross negligence before a jury-submissible question of fact may exist, incorrectly concluding that defendant made a showing sufficient to clear that bar, and basing its holding in part on an assumed rationale for the trial court's admission of speeding evidence even though that decision was not before the Court.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED June 24, 2026

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

No. 167492

MICHAEL MARC MORGAN,

       Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH

HOOD, J.

On October 8, 2025, we heard oral argument on the application for leave to appeal the August 8, 2024 judgment of the Court of Appeals, which affirmed the district court's order denying the motion filed by defendant, Michael Marc Morgan, to admit evidence regarding the blood alcohol concentration (BAC) of the decedent, Donald Douglas Arnold. We again consider that application. See MCR 7.305(I)(1). In lieu of granting leave to

appeal, we reverse the judgment of the Court of Appeals and remand this case to the district court.

The critical issue in this appeal is what bearing the proposed BAC evidence has on the issue of proximate cause. In other words: does evidence of the decedent's possible intoxication make it either more likely or less likely that Morgan was the proximate cause of the crash that led to the decedent's death? And if it does, is that evidence admissible under MRE 403? Standing alone, evidence of the decedent's BAC, which may have been as high as 0.081 grams per deciliter (g/dL), would not necessarily be relevant under MRE 401—let alone admissible under MRE 403. See *People v Feezel*, 486 Mich 184, 202; 783 NW2d 67 (2010) (opinion by CAVANAGH, J.) (holding that "any level of intoxication on the part of a victim is not automatically relevant").[1] Similarly, standing alone, evidence of the decedent's possible speeding—depending on how fast he was going—might not be relevant. See *People v Barnes*, 182 Mich 179, 181, 192-193, 195-196; 148 NW 400 (1914) (holding that a violation of the speed limit does not per se establish gross negligence and noting that driving one mile per hour over the speed limit is not gross negligence but acknowledging the possibility that driving 10 miles per hour (mph) over the speed limit might be in some circumstances). See also *People v McCoy*, 223 Mich App 500, 504; 566 NW2d 667 (1997) (in holding that driving 100 mph in a residential neighborhood is gross

---

[1] Although Justice CAVANAGH's lead opinion was signed by only two other justices, it was joined by Justice WEAVER in all but footnote 14 and the citations of *People v Crawford*, 458 Mich 376; 582 NW2d 785 (1998), and thus had majority support but for these exceptions. See *Feezel*, 486 Mich at 217 (WEAVER, J., concurring). For ease of reading, subsequent citations of the lead opinion will omit the authorial parenthetical unless these exceptions are implicated.

negligence, stating, "[T]he appropriate consideration is not whether [the] defendant was exceeding the speed limit, but rather, whether [the] defendant acted with gross negligence under the totality of the circumstances, including [the] defendant's actual speed and the posted speed limit.").

Here, the district court admitted evidence of the decedent's possible speeding, which might have been as much as 20 mph over the speed limit, apparently acknowledging some bearing on proximate cause.[2] But it excluded evidence of his possible intoxication. We conclude under the facts of this case that evidence of the decedent's possible intoxication is admissible. It is relevant because it is probative of proximate cause in light of other admissible conduct. See MRE 401. And it is admissible under MRE 403 because the risk of unfair prejudice is low compared to the evidence's probative value; namely, its effect on the jury's ability to assess whether the decedent's intoxication, speed, and acceleration constituted gross negligence or a superseding cause. By excluding this evidence, the district court abused its discretion in two ways. First, it considered the evidence in a silo rather than as part of the comprehensive body of evidence that could inform the jury's decision on proximate cause. Second, without a clear rationale, it excluded evidence of

---

[2] The district court's decision to admit evidence of the decedent's possible speeding was not at issue before the Court of Appeals and is not at issue before us. As elsewhere described in further detail, the Court of Appeals nonetheless addressed this issue. See *People v Morgan*, unpublished per curiam opinion of the Court of Appeals, issued August 8, 2024 (Docket No. 367789), p 3. And considering that the operative test demands consideration of the totality of the circumstances, see *McCoy*, 223 Mich App at 504, evidence of the decedent's possible speeding—and the district court's decision with respect to the admission of that evidence—remains relevant to the admissibility of the intoxication evidence.

3

intoxication while admitting evidence of speeding. We, therefore, reverse and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS

This case concerns a motorcycle-car collision that resulted in the decedent's death. Morgan was driving in his car southbound on Kensington Road in Brighton Township, Michigan, at approximately 5:15 p.m. The decedent was traveling northbound on the same road, on his motorcycle.

Shortly before the collision, the decedent was stopped at a red light south of the collision site. When the light turned green, he allegedly accelerated quickly. According to one witness, it looked like the decedent's motorcycle "took off like a bat," accelerating "heavily" when the light changed. His exact speed remains in dispute.[3] Around that time, Morgan—who was approximately 750 feet away from the intersection—began to make a U-turn and entered the northbound lane in which the decedent was traveling. While Morgan was turning, and before the turn was completed, the decedent's motorcycle struck the side of Morgan's vehicle. The decedent died from his injuries approximately 75 minutes later.

According to an eyewitness, the decedent moved rightward within his lane just before his motorcycle struck Morgan's turning vehicle. Morgan claimed to neither see nor

---

[3] Morgan's proposed accident reconstructionist calculated that the decedent could have reached 75 mph within 400 feet of the intersection. He further opined that the decedent would have taken 8 to 10 seconds to travel from the intersection to the site of the collision and that Morgan would have had seven additional seconds to complete his U-turn had the decedent gone no faster than the posted speed limit of 55 mph. In contrast, however, the prosecution's accident reconstructionist opined that the decedent was traveling between 35 mph and 38 mph when the collision occurred.

hear the motorcycle approaching, stating after the collision that he was hit "out of nowhere." The prosecution later charged Morgan with a moving violation causing death under MCL 257.601d(1). The alleged underlying moving violation was an unlawful U-turn.

At a pretrial hearing, Morgan moved to admit evidence of the decedent's speed and BAC. The BAC evidence included a post-mortem toxicology report that showed the decedent's BAC was .059 g/dL at the time of his death, approximately 75 minutes after the collision. Morgan also sought to admit expert testimony that the decedent may have been impaired at the time of the collision, along with an explanation of the effects alcohol may have had on his operation of the motorcycle.[4] The district court concluded that evidence of the decedent's speed was admissible at trial but excluded evidence regarding the decedent's BAC. Morgan sought leave to appeal before the circuit court, which denied his application.

Morgan successfully applied for leave to appeal before the Court of Appeals. In a split decision, the Court of Appeals affirmed the district court's order, rejecting Morgan's argument that the district court abused its discretion by denying his motion to admit evidence regarding the decedent's BAC. See *People v Morgan*, unpublished per curiam opinion of the Court of Appeals, issued August 8, 2024 (Docket No. 367789), p 1. The

---

[4] Morgan's proposed expert testimony on toxicology included a "retrograde extrapolation"—essentially a method used to estimate a person's BAC at a certain point in time. See *People v Wager*, 460 Mich 118, 124; 594 NW2d 487 (1999). Although the decedent's BAC when tested 75 minutes after the collision was 0.059 g/dL, Morgan's proposed expert opined that the decedent's BAC at the time of the collision could have been as high as 0.071 to 0.081 g/dL. The prosecution contests the reliability of this figure.

5

Court of Appeals noted that the prosecution is required to prove proximate cause in a moving-violation-causing-death case. *Id*. at 2, citing MCL 257.601d(1). It further noted that establishing proximate cause requires a showing that the victim's injury was a direct and natural consequence of the defendant's actions. *Morgan*, unpub op at 2, citing *People v Schaefer*, 473 Mich 418, 436; 703 NW2d 774 (2005). But a victim's gross negligence may create a superseding cause that breaks the causal chain. *Morgan*, unpub op at 2, citing *Feezel*, 486 Mich at 195. Relying on *Feezel*, the Court of Appeals noted that a victim's intoxication is not automatically relevant or probative of gross negligence. *Morgan*, unpub op at 2, citing *Feezel*, 486 Mich at 202. It read *Feezel* to require a trial court to first examine a victim's exhibited conduct and determine whether there has been a preliminary showing of gross negligence. In other words: separate from intoxication, was the victim's conduct grossly negligent? The Court of Appeals concluded that, because the decedent's speeding (or other alleged negligence in operating the motorcycle) was not so excessive as to make out that preliminary showing, let alone that his BAC contributed to the collision, the district court did not abuse its discretion when it concluded that the evidence of his intoxication was inadmissible.[5] *Morgan*, unpub op at 4-5. The Court of Appeals also

---

[5] We observe that the Court of Appeals concluded without analysis or citation that this act of speeding was not grossly negligent. See *Morgan*, unpub op at 3 ("Although the victim's speeding would have shortened both drivers' reaction time, the question here is whether the act of exceeding the speed limit by, at most, 20 [mph] under these conditions provides the necessary showing of gross negligence."). It also characterized the district court as having concluded that speeding was "foreseeable" and not grossly negligent, when the district court's actual statements appear to acknowledge that there was testimony that the decedent was going as fast as 75 mph—an admittedly disputed fact—which it described as an issue that was "going to come down to credibility." This, combined with its admission of evidence regarding possible speeding, suggests that the district court understood that

6

rejected Morgan's argument that his proposed toxicology expert would have explained the nexus between the decedent's speeding and alcohol consumption because the expert's report only outlined the probable pharmacological effects of the decedent's BAC—it did not state that his BAC caused him to speed. *Morgan*, unpub op at 4.

Judge MARKEY dissented, concluding that the district court had abused its discretion. *Id*. at 1 (MARKEY, J., dissenting). She rejected the majority's methodology, noting that the court should not view the evidence of the decedent's conduct in speeding away from the intersection in a vacuum, separately from its consideration of possible intoxication or some level of impairment because of alcohol consumption. *Id*. at 6-7. Essentially, she concluded that speeding and possible intoxication are relevant to causation. *Id*. Therefore, Judge MARKEY would have reversed the district court's order excluding the BAC evidence. *Id*. at 8.

This appeal followed. We ordered oral argument on the application and directed the parties to file supplemental briefing addressing whether the district court abused its discretion; specifically, we directed the parties to address (1) whether evidence of the decedent's BAC is relevant, and (2) whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice. *People v Morgan*, 516 Mich 924, 924 (2024). We address each question in turn.

---

evidence of speeding (particularly if the jury believed the testimony that put the decedent's speed 20 mph over the speed limit) was relevant.

## II. LAW AND ANALYSIS

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Feezel*, 486 Mich at 192 (quotation marks and citation omitted).

Morgan stands charged with a moving violation causing death, in violation of MCL 257.601d(1). The statute provides:

> A person who commits a moving violation while operating a vehicle upon a highway or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles, is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $2,000.00, or both, if the moving violation was the proximate cause of the death of another person. [*Id*.]

This provision translates to four elements that the prosecution must prove beyond a reasonable doubt: (1) operation of a motor vehicle by the defendant, (2) operation on a highway (or other place open to the public or generally accessible to motor vehicles), (3) commission of a moving violation, and (4) that by committing the moving violation, the defendant caused a death. See MCL 257.601d(1); M Crim JI 15.15. The fourth element, causation, is the only element at issue in this appeal.

For crimes arising under the Michigan Vehicle Code, MCL 257.1 *et seq*., "cause," or causation, has a " 'unique, technical meaning.' " *Feezel*, 486 Mich at 194, quoting *Schaefer*, 473 Mich at 435. Causation has two parts: factual causation and proximate causation. *Feezel*, 486 Mich at 194. The prosecution is required to prove both parts. *Id*. at 194-195. See also *Schaefer*, 473 Mich at 436. "Factual causation exists if a finder of fact determines that 'but for' defendant's conduct the result would not have occurred."

8

*Feezel*, 486 Mich at 194-195. But to prove the charge, the prosecution must also show that the defendant's conduct was the proximate cause of the accident or the victim's death. *Id.* at 195.

Proximate cause, as the name suggests, means that the alleged criminal conduct is directly close to, and consequential to, the alleged harm. Cf. *Schaefer*, 473 Mich at 436. It requires the victim's injury to be a "direct and natural result" of the alleged criminal conduct. *Id*. (quotation marks and citation omitted). We have previously observed that proximate causation "is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural." *Id*. To make this determination requires an examination of "whether there was an intervening cause that superseded the defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken." *Id*. at 436-437. "Whether an intervening cause supersedes a defendant's conduct is a question of reasonable foreseeability." *Feezel*, 486 Mich at 195, citing *Schaefer*, 473 Mich at 437.

Reasonable foreseeability separates ordinary negligence from gross negligence, and courts make this distinction on a case-by-case basis. See *Feezel*, 486 Mich at 195-201. Ordinary negligence is reasonably foreseeable, so it cannot be a superseding cause that would sever the causal link between the defendant's conduct and victim's harm, i.e., proximate causation. *Id*. at 195. On the other hand, a victim's "gross negligence" or "intentional misconduct" is sufficient to "break the causal chain between the defendant and the victim because it is not reasonably foreseeable." *Id*. (quotation marks and citation omitted). This is the issue at the center of this case.

9

Gross negligence means "wantonness and disregard of the consequences" of an action. *Id.* at 195 (quotation marks and citation omitted). We have defined "wantonness" as " '[c]onduct indicating that the actor is aware of the risks but indifferent to the results,' " which "usually 'suggests a greater degree of culpability than recklessness . . . .' " *Feezel*, 486 Mich at 196, quoting *Black's Law Dictionary* (8th ed). In sum, a victim's *ordinary* negligence is not relevant to proximate causation, but their *gross* negligence may be, so it is important for the trier of fact to consider gross negligence when determining whether the prosecution has proved proximate cause beyond a reasonable doubt. See *Feezel*, 486 Mich at 196.

Relying on these legal principles, we now consider whether the district court properly excluded evidence of the decedent's intoxication, either as irrelevant under MRE 401 or as violative of MRE 403. Under the facts of this case, we conclude that the district court abused its discretion by excluding the evidence of intoxication under either theory.

We start with relevance. The Michigan Rules of Evidence provide that evidence is generally admissible if it is relevant, as defined in MRE 401, and not otherwise excludable under MRE 403 or some other authority. *Feezel*, 486 Mich at 197. See also MRE 402; MRE 401.[6] Evidence is relevant if it has materiality and probative value. *Feezel*, 486

---

[6] MRE 401 provides:

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

And MRE 402 provides:

Mich at 197 (opinion by CAVANAGH, J.), citing *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998); see also *Feezel*, 486 Mich at 217 (YOUNG, J., concurring in part and dissenting in part). "Materiality is the requirement that the proffered evidence be related to 'any fact that is of consequence' to the action." *Crawford*, 458 Mich at 388, quoting MRE 401. Because the prosecution must prove each element beyond a reasonable doubt, the elements of the offense are always at issue and material. *Crawford*, 458 Mich at 389. Regarding probative value, " '[t]he threshold is minimal.' " *Feezel*, 486 Mich at 197 (opinion by CAVANAGH, J.), quoting *Crawford*, 458 Mich at 390; see also *Feezel*, 486 Mich at 217 (YOUNG, J., concurring in part and dissenting in part). Any tendency to make a fact of consequence in the case more probable or less probable is sufficient probative force to clear this hurdle. *Feezel*, 486 Mich at 197.

Here, the proposed evidence satisfies the requirements for relevance under MRE 401. The evidence of intoxication is material because "the charge[] at issue require[s] the prosecution to prove an element of causation beyond a reasonable doubt." *Feezel*, 486 Mich at 198. It is also probative because "evidence of the victim's BAC must merely have *any* tendency to make gross negligence on the part of the victim more or less probable."

---

Relevant evidence is admissible unless any of the following provides otherwise:

- the United States Constitution;

- the Michigan Constitution;

- these rules; or

- other rules prescribed by the Supreme Court.

Irrelevant evidence is not admissible.

11

*Id*. As we stated in *Feezel*, intoxication, standing alone, might not be relevant. Likewise, speeding, standing alone, could be foreseeable depending on how fast the decedent was going and, therefore, not relevant to the issue of causation. But here, those two pieces of evidence occur together. We consider the decedent's alleged speeding and high rate of acceleration in light of his possible intoxication. And we consider his possible intoxication in light of his alleged speeding and high rate of acceleration. Both are relevant under the specific facts of this case.

The lower courts misapplied principles from *Feezel* to reach a different conclusion. In *Feezel*, we concluded that evidence of the victim's BAC was relevant and admissible. *Id*. at 198-202. There, a driver struck and killed a pedestrian who was heavily intoxicated, walking in the middle of the road, with his back to traffic, at night, during a rainstorm. *Id*. at 199.[7] We held that the "victim's extreme intoxication was highly probative of the issue of gross negligence" because the intoxication would have affected his ability to perceive the risks posed by his conduct and diminished his ability to react. *Id*.

In reaching this conclusion, we relied on the basic definition of "probative," acknowledged that there would be situations in which a victim's BAC was inadmissible, and focused the critical inquiry on conduct, rather than the level of intoxication. *Id*. at 199-200, 202. We stated the general principle: "[U]nder the broad definition of 'probative,' evidence of the victim's BAC must merely have *any* tendency to make gross negligence on the part of the victim more or less probable." *Id*. at 198 (opinion by CAVANAGH, J.), citing *Crawford*, 458 Mich at 389-390; see also *Feezel*, 486 Mich at 217 (YOUNG, J.,

---

[7] We observe that, in certain locations—like a lively nightlife district—a drunk person in the middle of the street may be foreseeable. Nonetheless, those were not the facts of *Feezel*.

12

concurring in part and dissenting in part). We then acknowledged that "[d]epending on the facts of a particular case, there may be instances in which a victim's intoxication is not sufficiently probative," specifically, when the facts do not create a question "about whether the victim was *conducting himself or herself* in a grossly negligent manner." *Feezel*, 486 Mich at 198-199 (emphasis added). We discerned the following rule:

> Generally, the mere fact that a victim was intoxicated at the time a defendant committed a crime is not sufficient to render evidence of the victim's intoxication admissible. While intoxication may explain why a person acted in a particular manner, being intoxicated, by itself, is not conduct amounting to gross negligence. [*Id*. at 199.]

When applying that rule to the facts in *Feezel*, we concluded that the victim's "extreme intoxication was highly probative of the issue of gross negligence" because it "would have affected his ability to perceive the risks posed by his conduct and diminished his capacity to react to the world around him." *Id*. We emphasized, "Indeed, in this case, the proffered superseding cause was the victim's presence in the middle of the road with his back to traffic at night during a rain storm with a sidewalk nearby." *Id*. We concluded that these proofs "were sufficient to create a jury-submissible question about whether the victim was grossly negligent" and noted that the high level of intoxication would aid the jury in determining whether the victim acted with wantonness. *Id*., citing *Barnes*, 182 Mich at 198. In other words, evidence of the victim's intoxication was admissible because of his conduct, but it also informed his conduct. Cf. *Feezel*, 486 Mich at 199.[8]

---

[8] The dissent describes this approach as "undermin[ing] the spirit of *Feezel*[] . . . ." As stated, we agree that "the mere consumption of alcohol by a victim does not automatically amount to a superseding cause or de facto gross negligence." *Feezel*, 486 Mich at 202. But "[t]he court may allow the admission of evidence of the victim's intoxication to aid the jury in determining whether the victim's actions were grossly negligent" when the proofs are sufficient to create a fact question. *Id*. Here, the intoxication evidence informs

Three aspects of the conclusion in *Feezel* on relevance warrant emphasis. First, *Feezel* did not set a floor for the level of intoxication that is relevant. See *Feezel*, 486 Mich at 202 (emphasizing that "any level of intoxication" is not automatically relevant). It did not conclude that the victim's BAC was relevant because it was high; it was relevant in light of the victim's conduct. *Id*. Put differently, the victim's conduct tells us *whether the BAC is probative*; the BAC (high or low) informs us of the probative *value*. See *id*. Second, it did not set a floor for the type of conduct that opens the door to consideration of intoxication. See *id*. at 202. Third, it did not strictly analyze intoxication or conduct in isolation. See *id*. at 200-201. One leads to the other, but they are part of a contexture that may bear on proximate cause, subject to the facts of each case. *Id*. at 202-203.

Applying *Feezel* here, we conclude that evidence of the decedent's BAC is relevant. Recall, the district court already admitted evidence of his possible speed, which may have been as high as 75 mph (or 20 mph over the speed limit) or as low as 35 mph. Contrary to the Court of Appeals' interpretation of its ruling, the district court on some level determined that testimony about the decedent's speed and acceleration, and the expert testimony regarding the specific rate of speed, was admissible.[9] That is to say, it is relevant in that it

---

the alleged quick acceleration to 20 mph over the speed limit near an intersection during rush hour—evidence that the trial court already determined was admissible. Because this evidence creates "a jury-submissible question about whether the [decedent] was grossly negligent," evidence regarding the decedent's intoxication will assist the jury "in determining whether the [decedent] acted with 'wantonness and a disregard of the consequences which may ensue[.]' " *Feezel*, 486 Mich at 199, quoting *Barnes*, 182 Mich at 198.

[9] The dissent takes issue with this conclusion. But one of two things is true: either the district court considered the evidence of speeding and admitted it as bearing on gross negligence or it abused its discretion by admitting irrelevant evidence.

is both material and probative. See MRE 401. Again, speeding, i.e., exceeding the speed limit by at least one mile per hour, does not necessarily implicate gross negligence. See *Barnes*, 182 Mich at 193. But some speeding does. See *McCoy*, 223 Mich App at 504. It depends on the totality of the circumstances, including the "actual speed and the posted speed limit." *Id.*, citing *Barnes*, 182 Mich at 193. And, as the district court seems to have been aware, "[t]his is a question that ordinarily is for the jury." *McCoy*, 223 Mich App at 504, citing *Barnes*, 182 Mich at 199. Regardless of its other commentary, or other conclusions, the district court admitted this evidence. The possibility of the decedent's speeding appears to bear on one issue: causation. The district court, therefore, implicitly determined that gross negligence is "in issue." *Feezel*, 486 Mich at 202 (quotation marks omitted). Against this backdrop, evidence of the decedent's intoxication may aid the jury's determination of whether his actions were grossly negligent. See *id.* at 203. As in *Feezel*, the decedent's intoxication—which, though lesser than that of the victim in *Feezel*, was not negligible—potentially "affected his ability to perceive the risks posed by his conduct and diminished his capacity to react to the world around him." *Id.* at 199.

In isolation, it is questionable whether either piece of evidence would be sufficient to implicate gross negligence. But every case from *Barnes* to *Feezel*—nearly 100 years later—indicates that we do not consider this evidence in a silo. The decedent was possibly moderately intoxicated while possibly speeding on his motorcycle. If Morgan had crashed into the decedent while he sat moderately intoxicated on his motorcycle at a red light, or drove according to the rules of the road, his intoxication might not be relevant. But that is not the case here. Instead, the decedent allegedly "took off" at a high rate of speed. The jury may consider the role intoxication played in his possible speeding, his rates of

15

acceleration, and his ability to react to Morgan's allegedly unlawful U-turn.[10] The evidence is relevant.

In response to our dissenting colleague, we emphasize that the standard Morgan must meet at this juncture is lower than what would be required to *prove* gross negligence at trial. At this stage, Morgan must only establish that gross negligence is " 'in issue,' " meaning that "the proofs are sufficient to create a question of fact for the jury." *Feezel*, 486 Mich at 202. In other words, Morgan must merely show that "a reasonable juror *could* view the [decedent's] conduct as demonstrating a wanton disregard of the consequences that may ensue[.]" *Id*. (emphasis added). This is not a heavy burden. In the comparable context of self-defense, we have stated that a defendant may pursue their defense at trial "[e]ven when the supporting evidence is weak or of doubtful credibility . . . ." *People v Leffew*, 508 Mich 625, 644; 975 NW2d 896 (2022) (quotation marks and citation omitted). And at trial, Morgan does not bear the burden of proving that the decedent was grossly negligent. Rather, the prosecution must prove every element of the offense—including proximate cause—beyond a reasonable doubt. See *Feezel*, 486 Mich at 195-197.

Having addressed relevance, we next conclude that the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the jury. See MRE 403. The evidence is not unfairly prejudicial because, as explained, the decedent's possible speeding and rapid acceleration on a motorcycle after possibly drinking goes "to the heart of whether the [decedent] was grossly

_____

[10] The top line of the dissent and foundational point of disagreement is that evidence of the decedent's conduct (i.e., intoxication and rapid acceleration to 20 mph over the posted speed limit near an intersection during rush hour), if believed, is not enough to amount to gross negligence.

negligent[.]" *Feezel*, 486 Mich at 200. That is, the decedent's "conduct directly relate[s] to the disputed element of proximate causation and, therefore, whether the victim's actions amounted to ordinary or gross negligence" because proximate cause "necessarily require[s] the trier of fact to determine whether the victim's own behavior amounted to a superseding cause." *Id*. Though the conduct was less egregious and the intoxication was less pronounced than that in *Feezel*, the combination—if a jury believes such evidence—is not merely marginally probative, but potentially critical to the issue of causation.

## III. CONCLUSION

For these reasons, we disagree with the Court of Appeals and conclude that the district court abused its discretion by excluding the evidence of intoxication on the basis of relevance or MRE 403. We, therefore, reverse the Court of Appeals judgment, vacate the district court's order excluding the evidence, and remand to the district court for further proceedings. This opinion is limited to the question of relevance and MRE 403 and does not restrict the parties or the district court from addressing other issues that may affect admissibility. We do not retain jurisdiction.

> Noah P. Hood
> Megan K. Cavanagh
> Richard H. Bernstein
> Elizabeth M. Welch
> Kyra H. Bolden
> Kimberly A. Thomas

17

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                              No. 167492

MICHAEL MARC MORGAN,

      Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

This case arises from a collision between a car and a motorcycle that resulted in the death of Donald Arnold, the operator of the motorcycle. Defendant is charged with the misdemeanor offense of moving violation causing death.[1] Defendant seeks to admit evidence of Arnold's blood alcohol concentration (BAC). The majority opinion holds that defendant may introduce evidence of Arnold's BAC because it is relevant to the issue of gross negligence.[2] The majority opinion also holds that both Arnold's conduct and intoxication inform the question of whether he acted with gross negligence. I take no issue with this aspect of the majority opinion. Nonetheless, I would not permit evidence of Arnold's BAC to be presented to the jury. In holding that defendant may introduce the

_____

[1] MCL 257.601d(1).

[2] To reach this conclusion, the Court clarifies that this Court's decision in *People v Feezel* does not require a trial court to consider whether Arnold's conduct was grossly negligent independently from evidence that Arnold may have been intoxicated. *People v Feezel*, 486 Mich 184; 783 NW2d 67 (2010).

BAC evidence, the Court implicitly decides that "the proofs are sufficient to create a question of fact for the jury"[3] on the issue of the victim's gross negligence as an intervening proximate cause of the accident. I disagree. I conclude that, taken together with evidence of the decedent's speed and operation of his motorcycle, the BAC evidence does not create a jury-submissible question of fact on the issue of gross negligence. As a matter of law, an elevated BAC combined with possible speeding and prompt acceleration does not rise to the level of gross negligence, defined as "wanton disregard of the consequences that may ensue[.]"[4] It is, at best, ordinary negligence. I simply cannot conclude on these facts that defendant has made an adequate showing of proof to create a question of fact for the jury on the issue of *gross* negligence.

The majority opinion's argument proceeds as follows. Evidence is admissible under MRE 402 if it is relevant. Evidence is relevant if it is material and has probative value.[5] Material evidence is evidence that bears on a fact that "is of consequence in determining

---

[3] *Id.* at 202 (opinion by CAVANAGH, J.). Justice CAVANAGH's lead opinion was signed by only two other justices, but it was joined by Justice WEAVER except for one footnote and one citation. See *Feezel*, 486 Mich at 217 (WEAVER, J., concurring). Those exceptions are not cited here, so subsequent citations of the lead opinion will not include the parenthetical indicating authorship.

[4] *Id.*

[5] MRE 401 provides:

> Evidence is relevant if:
>
> > (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> > (b) the fact is of consequence in determining the action.

the action."[6]  Because causation is an element of the underlying crime, evidence bearing on causation is material.  Evidence is probative if "it has any tendency to make a fact" that is of consequence to the determination of the action "more or less probable than it would be without the evidence[.]"[7]  Because evidence of the decedent's intoxication has a tendency to make the decedent's gross negligence more or less probable, it is probative. Although *Feezel* stated that "being intoxicated, by itself, is not conduct amounting to gross negligence,"[8] the majority concludes that the combination of Arnold's BAC and the evidence of his speed and rapid acceleration creates a question of his gross negligence for the jury to consider.  Additionally, the trial court admitted evidence of Arnold's speed, which is presumably relevant only to the issue of gross negligence.  It is inconsistent to admit evidence of speed as bearing on gross negligence but to exclude evidence of Arnold's BAC when that evidence would aid the jury in its determination of his gross negligence. For these reasons, the majority opinion concludes that the evidence should have been admitted.

I disagree with the determination that the BAC evidence should have been admitted. Our decision in *Feezel* established the following:

> Generally, the mere fact that a victim was intoxicated at the time a defendant committed a crime is not sufficient to render evidence of the victim's intoxication admissible.  While intoxication may explain why a person acted

---

[6] *Id.*

[7] *Id.*

[8] *Feezel*, 486 Mich at 199.

3

in a particular manner, being intoxicated, by itself, is not conduct amounting to gross negligence.[9]

While the majority opinion acknowledges this passage, this aspect of *Feezel* is by and large ignored. The practical effect of the majority's holding is that a defendant need not allege much *more* than "the mere fact that a victim was intoxicated"[10] in order to create a triable issue of gross negligence. Intoxication alone is generally not enough to put gross negligence at issue but, as of today's majority opinion, BAC evidence in addition to evidence of speeding and quick acceleration is apparently enough to clear that bar. This creates an "intoxication plus" standard for whether there exists a jury-submissible question on the issue of gross negligence. This holding greatly diminishes *Feezel*'s statement that intoxication alone is not enough to present the jury with the question of whether there is a break in the causal chain due to gross negligence. The majority opinion states that *Feezel* "did not set a floor for the type of conduct that opens the door to consideration of intoxication." But I struggle to read *Feezel* to accord with the proposition that the floor is so low as to include any showing greater than mere evidence of elevated BAC.

On the contrary, our caselaw supports the proposition that criminal defendants may not assert defenses that lack sufficient evidence to create a triable issue for the jury. For example, if a defendant pleads self-defense, the defendant must produce "some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist . . . ."[11] Likewise, to raise the defense of duress, "the

---

[9] *Id.*

[10] *Id.*

[11] *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010).

defendant has the burden of producing some evidence from which the jury can conclude that the essential elements of duress are present."[12] These examples demonstrate that it is a well-established principle of law that when parties fail to make a sufficient showing of evidence, courts are obliged to withhold unsupported issues from the jury.

Here, defendant has failed to make a showing sufficient to create a triable question of gross negligence. The proffered evidence suggests that Arnold's BAC was 0.59 g/dL about 75 minutes after the collision and arguably could have been as high as .071 to .081 g/dL at the time of the accident—just barely over the legal limit. Additionally, evidence suggests that Arnold was traveling anywhere between 35 and 75 miles per hour (mph), with the posted speed limit being 55 mph. One witness testified that Arnold "took off like a bat" and accelerated "heavily" when the light turned green at the intersection up the road.

Considered in the light most favorable to defendant, the facts before the trial court suggest mild intoxication, traveling 75 mph in a posted 55 mph zone, and a quick acceleration on a motorcycle. These facts do not rise to the level of gross negligence. As this Court stated in *Feezel*, "[g]ross negligence . . . is more than an enhanced version of ordinary negligence."[13] Rather, "[i]t means wantonness and disregard of the consequences which may ensue[.]"[14] "Wantonness is defined as conduct indicating that the actor is aware of the risks but indifferent to the results and usually suggests a greater degree of culpability

---

[12] *People v Lemons*, 454 Mich 234, 246; 562 NW2d 447 (1997) (quotation marks and citations omitted).

[13] *Feezel*, 486 Mich at 195.

[14] *Id*. (quotation marks and citation omitted).

than recklessness."[15] In the present case, to conclude that the decedent's conduct constituted a superseding proximate cause, the jury would have to find that the decedent's conduct was not merely ordinary negligence, not merely reckless conduct, but conduct that rose to the level of wantonness and disregard of the consequences that may ensue. Without question, Arnold's actions prior to his death were negligent. But I cannot conclude on the evidence viewed in the light most favorable to defendant that Arnold was grossly negligent at the time of the accident. The majority opinion fails to consider the reasonableness of a hypothetical jury verdict finding gross negligence in this case, instead seemingly placing great weight merely on the possibility that a jury *could* find gross negligence, and therefore concluding that the evidence should be admitted.[16] This ignores both caselaw and the implausibility of defendant's asserted gross-negligence defense.

In addition to these considerations, MRE 403 counsels against admission of the evidence. That rule states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[17] The BAC evidence could potentially sway the jury to unreasonably believe that the decedent's level of intoxication absolves defendant of culpability, regardless of the applicable standards of gross negligence. Without more

---

[15] *Id*. at 196 (quotation marks, citations, and alterations omitted).

[16] As the majority states, "Though the conduct was less egregious and the intoxication was less pronounced than that in *Feezel*, the combination—*if a jury believes it*—is not merely marginally probative, but potentially critical to the issue of causation." (Emphasis added.)

[17] MRE 403.

6

evidence bearing on gross negligence, the BAC evidence serves a minimal probative purpose but carries a high risk of unfair prejudice. It should therefore be excluded.

Separate from the issue of the sufficiency of the evidence and its prejudicial effect, the majority opinion also articulates a second support for its conclusion. It claims that the district court "implicitly determined that gross negligence is 'in issue'" by admitting evidence of the decedent's speeding.[18] This conflicts with the majority's earlier statement that "[t]he district court's decision to admit evidence of the decedent's possible speeding was not at issue before the Court of Appeals and is not at issue before us." I question the validity of assuming the rationale for a district court's admission of evidence when that decision is "not at issue before us." I particularly question the use of such an assumption as one of the primary bases for overruling the decision of the district court on a separate evidentiary question. The district court's reasoning for the admission of the speeding evidence is not in the record before us. It is inappropriate to speculate regarding the basis for the district court's decision on the speeding evidence and then use such speculation against the district court on the separate question of the admissibility of the BAC evidence.

Finally, this Court reviews evidentiary decisions for an abuse of discretion.[19] "A trial court may be said to have abused its discretion only when its decision falls outside the principled range of outcomes."[20] Even if this Court disagrees with the district court's conclusion, reversal of the district court is not warranted absent a finding that the district

---

[18] Quoting *Feezel*, 486 Mich at 202.

[19] *People v Sharpe*, 502 Mich 313, 323; 918 NW2d 504 (2018), citing *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010).

[20] *People v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008).

court abused its discretion. I conclude that the district court did not abuse its discretion by concluding that defendant failed to make a showing sufficient to create a triable issue of the decedent's gross negligence. The standard of review compels me to affirm the district court, because the court's conclusion does not fall outside the principled range of outcomes.

In sum, the majority opinion falls short on several fronts: it undermines the spirit of *Feezel*'s statement that evidence of intoxication alone is not enough to put gross negligence at issue, it gives short shrift to caselaw suggesting that defendants must present evidence of gross negligence before a jury-submissible question of fact may exist, it incorrectly concludes that defendant in the present case made a showing sufficient to clear that bar, and it based its holding in part on an assumed rationale for the trial court's admission of speeding evidence even though that decision is not before the Court. Accordingly, I dissent.

Brian K. Zahra